**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

**No. 92-2425**
_____


**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**FRANCISCA CASTILLO CASTRO, REMIDIOS MENDEZ,
JOHNNY LEE CAREY, CARMINE OSUNA,
LIONEL HORTIO BUITRON,**

**Defendants-Appellants.**

_____

Appeals from the United States District Court
for the Southern District of Texas
_____

(February 21, 1994)

Before WISDOM, HIGGINBOTHAM, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Appellants Francisca Castillo Castro ("Francisca"), Remidios Mendez ("Mendez"), Johnny Lee Carey ("Carey"), Carmine Osuna ("Osuna"), and Lionel Buitron ("Buitron") were convicted by a jury of conspiracy to possess with intent to distribute heroin in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846 and/or aiding and abetting the distribution of heroin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and 18 U.S.C. § 2. They appeal their convictions on various grounds. Finding no reversible error, we affirm.

## DISCUSSION

Reynaldo Cantu-Castro ("Ray Castro" or "Ray") owned and operated, with the assistance of several family members, the Castro Body Shop in Bryan/College Station, Texas. Ray Castro lived in an apartment located above the body shop. His ex-wife, Francisca, lived in a trailer a few doors away. They had been married for 47 years before getting divorced. In addition to doing legitimate body shop work, Ray Castro ran a heroin distribution operation. He had several people -- family members and non-family members alike -- assisting him with the operation of his heroin business.

Several individuals, including Ray, his son Angel Castro ("Angel"), and the appellants, were arrested and charged with various offenses relating to the heroin operation. In exchange for more lenient sentences, Ray and Angel pled guilty and testified at the joint trial of six of their co-indictees. At their joint trial, one of the defendants was found not guilty by the jury. The other five defendants, the appellants in this appeal, were found guilty of conspiracy to possess with intent to distribute heroin and/or aiding and abetting the distribution of heroin.

### A. Sufficiency of Evidence

Francisca, Mendez, Osuna, and Buitron claim that there was insufficient evidence to support their convictions. In reviewing challenges to sufficiency of the evidence, this court views the evidence in the light most favorable to the jury verdict and affirms if a rational trier of fact could have found that the government proved all essential elements of the crime beyond a

reasonable doubt.  See United States v. Ruiz, 987 F.2d 243, 259 (5th Cir. 1993).  All inferences and credibility determinations are to be resolved in favor of the jury's verdict.  See id.  To support a conviction of conspiracy with intent to distribute heroin, the prosecution must show beyond a reasonable doubt that (1) a conspiracy existed, (2) the defendant knew of the conspiracy, and (3) the defendant voluntarily joined the conspiracy.  See United States v. Sagaribay, 982 F.2d 906, 911-12 (5th Cir. 1993).

## Francisca Castro

The jury convicted Francisca of conspiracy with intent to distribute heroin.  The prosecution presented testimony by Della Espinoza, a co-indictee who pled guilty.  She testified that she would purchase heroin from Ray and Angel Castro.  Oftentimes, when she did not have money with which to purchase the heroin, she would trade clothes and other property for the drug.  She testified that a lot of the property that she traded for heroin was for Francisca. (R. 14:15-17).  On at least one occasion, Francisca asked Espinoza to get her some things and specifically asked her for pantyhose in a specific size and color.  After Espinoza delivered the pantyhose to Francisca and with Francisca still present, Espinoza received the heroin in exchange for the clothes.  On a separate occasion, Francisca looked through items that Espinoza had brought and picked out some earrings that were exchanged for heroin.  (R 14:17-18)

Rosemary Salazar also pled guilty in connection with this case and testified for the prosecution.  She often would call Ray on the phone to arrange a drug purchase and sometimes Francisca

3

would answer. (R 15:72) If Ray was not there, Francisca would tell Salazar that Francisca would send Ray to wherever Salazar wanted him to be sent. Francisca would sometimes be present when Salazar would purchase heroin from Ray, and Francisca would watch the transaction. (R. 15:88) Francisca could see what was going on, and she could hear what Salazar was asking for from Ray. (R. 15:89) On one occasion in particular, Salazar was trying to convince Ray to give her some heroin, but instead of paying with money, she promised Ray that he could go shopping for Francisca by using Salazar's department store credit card. Salazar directed the conversation to Francisca who told Salazar what items she wanted from the department store. Francisca then authorized Ray to go ahead and give the heroin to Salazar. Salazar testified that Francisca then told Salazar that she better be sure to bring her the things that she wanted from the store.

This activity by Francisca constitutes more than mere presence at a location where criminal activity is taking place. This evidence, when viewed in the light favorable to the verdict, establishes the existence of a conspiracy of which Francisca was knowledgeable and in which she voluntarily participated. Viewing this evidence in the light most favorable to the verdict, there was evidence to support Francisca's conviction for conspiracy with intent to distribute heroin.

### Remidios Mendez

Mendez was also convicted of conspiracy with intent to distribute heroin. As pointed out in Mendez' briefs to this court,

4

Della Espinoza testified that Mendez had sold and delivered heroin to her at least three times. (R. 14:26) Jennifer Kallus, an investigator with the Brazos Valley Narcotics Task Force, testified that she and a confidential informant were involved in a drug transaction with Mendez. (R. 14:117-22) Kallus also testified that on a later occasion, she and Sergeant Investigator Robert Rhynsburger were involved in a drug transaction with Mendez. (R. 14:124) Rhynsburger testified that Mendez was present during several heroin purchases. (R. 16:71, 77) Mendez also observed Rhynsburger weighing the heroin before purchasing it. (R. 16:82-83) Although Mendez argues that this evidence indicates that Mendez was merely present at a place where drug activity was being conducted, we find this contention to be unsupported in the evidence when viewed in the light most favorable to the verdict. This evidence is sufficient to affirm Mendez's conviction for conspiracy with intent to distribute heroin.

### Carmine Osuna

Osuna was convicted of aiding and abetting the distribution of heroin as well as conspiracy to possess with intent to distribute heroin. She complains only of the sufficiency of the evidence regarding her conviction for conspiracy. As Osuna points out in her brief to this court, Ray Castro, the admitted leader of this conspiracy, testified that he was the leader of the heroin operation and had once accepted delivery of at least a gram of heroin from Osuna. (R. 13:52) Osuna was present on several occasions when Ray bought heroin from Osuna's husband, Herminio.

5

Moreover, Rose Salazar testified that she traveled to Houston with an undercover agent to purchase heroin with government funds from Osuna. Osuna had sold Salazar heroin that Osuna kept in her house stashed in a coke can. (R. 15:67-68). Officer Jose Mora was the officer who arrested Osuna. He testified that Osuna told him, after being advised of her rights, that she was involved in the distribution of heroin along with her husband. (R. 14:235).

This evidence, when taken in the light most favorable to the prosecution, indicates that there was a conspiracy of which she had knowledge and in which she voluntarily participated. Rational jurors could have found beyond a reasonable doubt that Osuna was involved in a conspiracy with intent to distribute heroin.

### Lionel Buitron

Buitron was convicted of conspiracy to possess with intent to distribute heroin. Ray Castro testified that on one occasion, he purchased heroin from Buitron which Ray, in turn, sold to others. (R.13:49) Additionally, Richard Stewart of the Texas Department of Public Safety Narcotics Service testified that the authorities had received information that an unknown man would be at a particular location on a certain day to call and arrange a meeting with Ray Castro. On August 8, 1991 while under surveillance, Buitron, after making the call to Ray, was followed to a trailer house in Bryan, Texas where he met Ray. (R. 14:224) Shortly after leaving the meeting with Ray, the authorities arrested Buitron and confiscated approximately $2,041 from him, $1,900 of which was marked money that was traced to two heroin

6

purchases that government authorities had made from Ray Castro in June or July of 1991. (R. 14:222-23) This evidence, taken in the light most favorable to the verdict, is sufficient to establish that Buitron was guilty of conspiracy to possess with intent to distribute heroin.

## B. Expert Psychiatric Testimony

Johnny Lee Carey complains that the district court erred in denying his request to present expert testimony regarding his state of mind at the time of the offense, and, as a result, he was unable to present expert psychiatric testimony concerning his physiological impairment, brain damage, and the psychological and physiological effects of drug addiction.

Fed. R. Crim. P. 12.2 requires that the defendant notify the government in writing of any intention to introduce expert testimony relating to a mental disease, defect, or any other mental condition of the defendant bearing upon the issue of guilt. See Fed. R. Crim. P. 12.2(b). If the defendant fails to comply with this requirement, "the court may exclude the testimony of any expert witness offered by the defendant on the issue of the defendant's guilt." Fed. R. Crim. P. 12.2(d).

Carey concedes that he did not timely file his request because he was unaware of the proposed testimony of a co-defendant until after the deadline had passed. The district court denied his motion based on Fed. R. Crim. P. 12.2(b). The district court did not abuse its discretion in denying Carey's request to provide

expert testimony because Carey failed to comply with the notice requirements of the Federal Rules of Criminal Procedure.

### C. Psychological Examination

Carey also complains that the district court abused its discretion in denying his request for a psychological examination. The Criminal Justice Act, 18 U.S.C. § 3006A(e), provides that a "person who is financially unable to obtain investigative, expert, or other services necessary for adequate representation" may obtain such services after demonstrating in an ex parte proceeding that the services are necessary. See 18 U.S.C. § 3006A(e) (West Supp. 1993). The services of a psychiatric expert are necessary for adequate representation within this provision only when the defendant's sanity at the time of the offense is truly at issue. See United States v. Williams, 998 F.2d 258, 264 (1993); Williams v. Collins, 989 F.2d 841, 845 (1993). The defendant is required to make a "showing that his sanity was likely to be a significant factor at trial, such that the denial of a mental examination amounted to a denial of due process under Ake v. Oklahoma, [470 U.S. 68, 105 S. Ct. 1087 (1985)], or an abuse of discretion under 18 U.S.C. § 3006A." Williams, 998 F.2d at 264 (footnotes omitted).

Carey argues that his defense of insanity would have been based on his heroin addiction and the fact that he had previously been confined to a mental institution. These reasons are insufficient to put his sanity at the time of the offense into issue at trial. Evidence of heroin addiction is insufficient to show that a defendant's sanity would be a significant factor at

8

trial. See Volanty v. Lynaugh, 874 F.2d 243, 247 (5th Cir. 1989) (holding that drug addiction alone is insufficient to make the defendant's sanity a significant factor at trial under Ake). Moreover, evidence of drug addiction, even when coupled with past confinement in a mental institution, is still insufficient to establish the requisite factual showing necessary to give the trial court reason to doubt the defendant's sanity at the time of the offense. See Pedrero v. Wainwright, 590 F.2d 1383, 1391-92 (5th Cir. 1979).

Carey never provided the district court with any evidence, aside from his drug addiction, to support his request for psychiatric evaluation. Even when asked by the court directly, Carey's only support for putting his sanity into issue was the fact that he was a drug addict. He did not use this opportunity before the court to argue any evidence of prior institutionalization. (R. 17:7-8) Therefore, the district court did not abuse its discretion in denying Carey's request for psychological examination, and such denial did not violate Carey's due process rights under Ake.

### D.  Motion to Sever

Francisca Castro claims that the district court abused its discretion in failing to grant her motion to sever her case from that of her co-defendants. As stated earlier, Francisca's ex-husband, Ray Castro, and her son Angel pled guilty and testified at the trial of Francisca and five other co-indictees. As part of their plea arrangement, neither was required to testify against Francisca, and neither did so. Francisca now complains that she

9

was prejudiced because the jury could have thought that Ray and Angel were "protecting" her. She claims that she was prejudiced because having no duty to take the stand in her own defense, her counsel was forced to ask questions of her relatives as to her involvement.

Denial of a motion for severance is evaluated for an abuse of discretion. See Zafiro v. United States, ___ U.S. ___, 113 S.Ct. 933, 937 (1993); United States v. Branch, 989 F.2d 752, 756 (5th Cir. 1993). Broad discretion is given to district courts to examine motions for severance made by criminal defendants. See Branch, 989 F.2d at 756. Where defendants have been properly joined for trial, "a severance is warranted only to avert 'serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making reliable judgments about guilt or innocence.'" Id. (quoting Zafiro, 113 S.Ct. at 938.) Any prejudice that exists can generally be cured through jury instructions. See id.

Francisca and the other defendants were indicted together. Not only did Ray and Angel testify at trial that they had a deal with the government that they would not testify against Francisca, but the district court instructed the jury:

> [T]he case of each defendant should be considered separately and individually. The fact that you may find one or more of the defendants guilty or not guilty of any of the crimes charged should not control your verdict as to any other crime or any other defendant. You must give separate consideration to the evidence as to each defendant.

(R. 18:135)

10

Francisca was not prejudiced by being tried with her co-defendants. Moreover, any prejudice was cured by testimony and the court's instruction to the jury. The district court did not abuse its discretion in denying Francisca's motion for severance.

### E. Motion for Continuance

Mendez argues that the district court abused its discretion by denying her motion for continuance. Mendez claims that on the first day of trial, she was notified for the first time that a witness who had earlier pled guilty to involvement in this heroin operation planned to testify that Mendez had intentionally and knowingly received stolen property in return for heroin. Counsel for Mendez moved for continuance based on surprise and undue delay in order to prepare for that testimony. Both parties agree that the government was under no duty to disclose a summary of this witness's probable testimony prior to or during trial.

This court will reverse a district court's decision denying a defendant's motion for continuance only when the district court has abused its discretion and the defendant can establish that he suffered serious prejudice. See United States v. Brito-Hernandez, 996 F.2d 80, 83 (5th Cir. 1993). Mendez has not indicated the ways in which she was seriously prejudiced by not receiving a continuance, aside from claiming that she was surprised and did not have the opportunity to adequately prepare her case. We fail to see how the district court abused its discretion. Moreover, a thorough review of the record indicates that the district court did not abuse its discretion in such a way as to

11

cause serious prejudice to Mendez.  We affirm the district court's denial of continuance.

## VII. Conclusion

Finding no reversible error, we **AFFIRM** the decision of the district court.