**UNITED STATES COURT OF APPEAL**
**FIFTH CIRCUIT**

_____

No. 93-1406
_____

UNITED STATES OF AMERICA,

                              Plaintiff-Appellee,

        versus

JAMIE REAY MACKAY,
a/k/a/ Kevin Neil Carpenter,

                              Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Texas
_____
(September 20, 1994)


Before WIENER, EMILIO M. GARZA, and BENAVIDES, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

    Defendant Jamie R. Mackay ("Mackay") appeals his conviction for (1) conspiracy to transport stolen goods interstate, in violation of 18 U.S.C. § 371 (1988); and (2) knowing transportation of stolen goods interstate, in violation of 18 U.S.C. § 2314 (1988).  We reverse Mackay's conviction on the conspiracy count for lack of sufficient evidence and affirm his conviction for interstate transportation of stolen goods.

I

In early June of 1991, Mackay transported a 580 Super E backhoe from Missouri to Dallas, where he hoped to sell it for $16,500. Before arriving in Dallas, he called a former college roommate who lived in East Dallas named Daniel Lyon and asked if he knew anyone who might be interested in buying the backhoe. He then called again a few days later to ask if he could use the Lyons' phone number for a classified advertisement he planned to run in a Dallas newspaper. When Lyons told Mackay that he did not think it would be a good idea to use their number (because his wife was in the midst of a difficult pregnancy), Mackay revealed that he had in fact already placed the advertisement in the Dallas Morning News earlier that day.

Mackay arrived in Dallas in a pickup truck with the backhoe on a trailer and called Lyons, who met him at a fast-food restaurant. Mackay was accompanied by a man whom he introduced as "Kevin." Lyons asked Mackay if he owned the backhoe, and Mackay told him he did. Lyons then led Mackay and "Kevin" from the restaurant to the Lyons' home. Mackay and his companion later left to find a motel and a storage area for the backhoe.

Two days later, Mackay called the Shurgard Storage Center in Irving, Texas to inquire about renting space for his backhoe and trailer. Mackay and an unidentified man arrived at the storage facility about an hour later with the backhoe. The two men unhitched the trailer and parked the backhoe and trailer in two

separate spaces. They then went to the office to complete the necessary paperwork, and Mackay leased the spaces under the name "Kevin Carpenter," presenting a Florida driver's license as identification.

Mackay also asked the rental facility manager to let people in to see the backhoe. The manager agreed, provided they came during business hours and Mackay called to notify him first. Pursuant to their agreement, Mackay called a couple of times, and the manager allowed people to see the backhoe.

Tony Foreman, a used construction equipment dealer, was among the prospective buyers who came to see the backhoe. The circumstances of the backhoe's sale and his inspection of the backhoe's identification number plates led Foreman to believe the backhoe was stolen, so he called Bruce Tabor, a lieutenant with the Texas Department of Public Safety Motor Vehicle Theft Service. Tabor traced the backhoe's identification numbers to Bill Cole in Missouri.[1] Tabor called Cole, who told him he still owned the

_____

[1] The evidence at trial showed that in March of that year, Jamie Mackay and Michael Duncan had visited a man named Bill Cole at a jobsite in Springfield, Missouri. Duncan inquired about buying some construction equipment, but Cole did not have any for sale. Cole did, however, have a truck for sale at his home in Fleistatt, and he took the two men to see it. While there, Mackay and Duncan expressed an interest in Cole's skiploader and 580 Super E backhoe. At one point, Cole left Mackay and Duncan alone with the equipment while he took a phone call. When he returned, Duncan negotiated with Cole to buy the truck.

Almost a year after this meeting, Cole met Mackay and Duncan on a highway in Missouri. Duncan told Cole he could not buy Cole's truck because he was in some trouble with the law and mentioned that they were on their way to Dallas for court. Duncan and Mackay also said, "If the authorities call you, don't tell them anything." Cole responded, "I don't know anything to tell them."

backhoe, but that it should have been on a jobsite in Tennessee.[2]

Based on his conversation with Cole, Tabor impounded the backhoe. He also called the number listed in Mackay's classified ad. The woman who answered gave him a telephone number and extension for "Jamie," which a dispatcher then traced to Mackay's motel. When Tabor went to the motel room, he discovered that the occupants of the room had already checked out. In the room's trash can, he found a room receipt for "Kevin Carpenter, 328 North Cedar in Nevada, Missouri."

About this time, Mackay called Lyons to inquire whether anyone had called about the backhoe. During this conversation, Mackay told Lyons the backhoe was missing, saying: "It's gone and just don't say any more about [it]." Mackay also said, "Yeah, somebody's playing games with us down here."

Several days later, Cole called Tabor and told him that he had located his backhoe and that the identification plates were intact. The police then investigated the impounded backhoe more closely and discovered the original identification numbers, which they traced to Lester Marlatt. Marlatt's 580 Super E backhoe had been stolen from Raytown, Missouri two months earlier.

Mackay was indicted for conspiracy to transport stolen goods interstate, in violation of 18 U.S.C. § 371, and knowing transportation of stolen goods interstate, in violation of 18

---

[2] At trial, Cole denied telling anyone the backhoe was in Tennessee and testified that in fact the backhoe was in Cassville, Missouri.

U.S.C. § 2314.  Following a jury trial, Mackay was convicted on both counts.  The district court sentenced him to a term of imprisonment of 21 months and two concurrent 3-year terms of supervised release.

Mackay appeals his conviction, contending that (1) the evidence was insufficient to support his conviction for conspiracy to transport stolen goods; (2) the prosecutor impermissibly commented in his closing argument on Mackay's failure to testify; and (3) the district court erred in assessing a two-level increase in Mackay's sentence for being "a person in the business of receiving and selling stolen property."[3]

## II

### A

Mackay challenges the sufficiency of the evidence to sustain his conviction for conspiracy to transport the stolen backhoe.  He claims that the evidence at trial was insufficient to prove an agreement by two or more individuals to knowingly transport stolen goods interstate.  We view the evidence in the light most favorable to the jury verdict and will affirm if a rational trier of fact could find that the Government proved all essential elements of the

---

[3]     Mackay also argued in his original brief that his convictions should be reversed because the district court erroneously instructed the jury on the definition of reasonable doubt.  As Mackay acknowledges in his reply brief to this Court, we have recently affirmed in all relevant respects the same definition of reasonable doubt on which the district court instructed the jury in this case.  *See United States v. Williams*, 20 F.3d 125 (5th Cir. 1994). Consequently, Mackay has preserved this issue for further appeal, but we see no need to address it further here.

crime beyond a reasonable doubt. *See United States v. Castro*, 15 F.3d 417, 419 (5th Cir. 1994). If, on the other hand, "the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, the conviction should be reversed." *United States v. Pennington*, 20 F.3d 593, 597 (5th Cir. 1994).

"A conviction for conspiracy under 18 U.S.C. § 371 requires that the government prove beyond a reasonable doubt 1) an agreement between two or more persons, 2) to commit a crime against the United States, and 3) an overt act committed by one of the conspirators in furtherance of the agreement." *United States v. Schmick*, 904 F.2d 936, 941 (5th Cir. 1990) (citations omitted), *cert. denied*, 498 U.S. 1067, 111 S. Ct. 782, 112 L. Ed. 2d 845 (1991). "The government must prove beyond a reasonable doubt that the defendant knew of the conspiracy and that he voluntarily became a part of it." *United States v. Yamin*, 868 F.2d 130, 133 (5th Cir.), *cert. denied*, 492 U.S. 924, 109 S. Ct. 3258, 50 L. Ed. 2d 292 (1989). While the government may prove the existence of a conspiracy through circumstantial evidence, and the agreement need not be formal or spoken, *United States v. Williams-Hendricks*, 805 F.2d 496, 502 (5th Cir. 1986), it "must do more than `pile inference upon inference upon which to base a conspiracy charge.'" *Id.* (quoting *United States v. Sheikh*, 654 F.2d 1057, 1063 (5th Cir.

1981), *overruled on other grounds*, *United States v. Zuniga-Salinas*, 952 F.2d 876 (5th Cir. 1992)).

The record must contain sufficient evidence that Mackay conspired with someone to transport stolen goods in violation of 18 U.S.C. § 2314. A violation of § 2314 requires the prosecution to show that (1) the defendant transported stolen goods in interstate commerce; (2) the defendant knew the goods were stolen; and (3) the goods were worth more than $5,000. *See United States v. Parziale*, 947 F.2d 123, 127 (5th Cir. 1991), *cert. denied*, ___ U.S. ___, 112 S. Ct. 1499, 117 L. Ed. 2d. 638 (1992).

The evidence at trial, viewed in the light most favorable to the verdict, fails to support the reasonable inference of even a tacit agreement between Mackay and anyone else to knowingly transport the stolen backhoe to Texas. Although Mackay's conspiracy conviction does not depend on the *identification* of his co-conspirators for its validity, *see*, *e.g.*, *United States v. Winn*, 948 F.2d 145, 157 (5th Cir. 1991), *cert. denied*, ___ U.S. ___, 112 S. Ct. 1599, 118 L. Ed. 2d 313 (1992), to convict Mackay of conspiring with unknown persons, the evidence must support "the proposition that such a co-conspirator did exist and that the defendant did conspire with him." *United States v. Moree*, 897 F.2d 1329, 1332 (5th Cir. 1990) (quoting *United States v. Pruett*, 551 F.2d 1365, 1369 (5th Cir. 1977)).

The evidence suggests three possible co-conspirators: Mackay's unidentified companion, Michael Duncan, and Bill Cole.

The most likely of the three is Mackay's unidentified companion. The evidence shows that this individual:[4] (1) travelled to Texas with Mackay, (2) was present when Mackay introduced him to the Lyons as "Kevin," (3) helped unload the backhoe at the storage facility, and (4) was present in the room when Mackay used a false driver's license to rent storage space under the alias "Kevin Carpenter." These facts establish an association between Mackay and his companion during their trip to Texas, but to sustain a conspiracy conviction, they must also prove an agreement to commit a crime. *See United States v. Grassi*, 616 F.2d 1295, 1301 (5th Cir.) ("[O]ne does not become a coconspirator simply by virtue of knowledge of a conspiracy and association with conspirators. The essence of a conspiracy is the agreement to engage in concerted unlawful activity." (citations omitted)), *cert. denied*, 449 U.S. 956, 101 S. Ct. 363, 66 L. Ed. 2d 220 (1980).

The government argues that the evidence surrounding Mackay's companion established that he "actually participated in the transport of the backhoe." However, evidence that the companion helped transport the backhoe does not prove that he agreed with Mackay to transport a *stolen* backhoe. A conspiracy conviction requires proof of an agreement to commit a crime. *See Schmick*, 904 F.2d at 941. There is no evidence in the record to support a

---

[4] There is no evidence that each of the unidentified men whom witnesses observed with Mackay are one and the same person. We assume arguendo, however, that the jury inferred that Mackay's companion was one person, making the possibility of an agreement between the two men to commit a crime more likely.

finding that Mackay's companion knew the backhoe was stolen, let alone that he agreed to transport a stolen backhoe.

The government further argues that Mackay's use of a false driver's license in the name of "Kevin Carpenter" in the presence of his companion was sufficient evidence upon which the jury could reasonably infer knowledge of criminal activity. We disagree. This argument requires several prior inferences. First, the jury must have inferred from the companion's presence in the office that he knew Mackay used a driver's license bearing the name "Kevin Carpenter." Second, the jury must have inferred that the companion knew this name to be false. The jury must then have inferred that the companion deduced from Mackay's use of an alias that he was transporting a stolen backhoe. Finally, the jury must have inferred that the companion joined Mackay to effectuate the crime. Although the government may prove the existence of a conspiracy through circumstantial evidence, it "must do more than `pile inference upon inference upon which to base a conspiracy charge.'" *Williams-Hendricks*, 805 F.2d at 502; *see also United States v. Sheikh*, 654 F.2d 1057, 1062-63 (5th Cir. Unit A Sept. 1981) (reversing conviction for conspiracy to import heroin where evidence showed that defendant knew an individual in Iran whose telephone number appeared on a package from Iran containing heroin, visited the man in Iran shortly before the heroin arrived in the United States, and called the man after learning the heroin had

arrived in the United States), *overruled on other grounds, United States v. Zuniga-Salinas*, 952 F.2d 876 (5th Cir. 1992).

We similarly find insufficient evidence to prove that Michael Duncan conspired with Mackay. Cole testified that he left Duncan and Mackay alone in the vicinity of his construction equipment two months before Mackay's trip to Dallas. Among the equipment that Duncan and Mackay inspected was Cole's 580 Super E backhoe, the same model as the stolen backhoe Mackay transported to Texas. The identification number on Cole's backhoe also coincided with the number on the stolen backhoe that Mackay transported to Texas. This evidence is probative that Mackay knowingly transported stolen goods, but it does not raise an inference that Duncan agreed with Mackay to transport the stolen backhoe. Even if Mackay did copy the backhoe's identification numbers on Cole's property that day, this does not prove Duncan assisted in this enterprise, let alone that Duncan later agreed to transport another, stolen backhoe interstate. Furthermore, there is no evidence to support a finding that Duncan accompanied Mackay to Dallas.

The government emphasizes that when Cole encountered Mackay and Duncan driving to Dallas they told him (1) not to speak to the authorities, and (2) that Duncan could not buy Cole's truck because he was in some trouble with the law. Duncan's trouble with the law may or may not have been related to this case.[5] Again, Duncan's

---

[5] The government notes in its brief that Duncan was not indicted for conspiracy to transport the backhoe because of a lack of evidence against him.

mere association with Mackay, without an agreement to commit a crime against the United States, does not suffice. *See Grassi*, 616 F.2d at 1301.

Finally, the Government argues that Bill Cole could have conspired with Mackay. Defense counsel did suggest in her opening statement at trial that she would show Mackay had an agreement with Cole to sell the backhoe. The only evidence even remotely supporting this theory, however, is the testimony of Mackay's father that his son told him he purchased the backhoe from Cole. When Cole testified, he made no mention of an agreement with Mackay and explicitly denied selling Mackay a backhoe. Based on this evidence, a rational trier of fact could not find, beyond a reasonable doubt, that Cole and Mackay agreed to transport a stolen backhoe interstate. *See Castro*, 15 F.3d at 419.

B

Mackay next contends that the prosecutor violated Mackay's Fifth Amendment rights by commenting on Mackay's failure to testify. The Fifth Amendment prohibits a prosecutor from commenting directly or indirectly on a defendant's failure to testify. *See Griffin v. California*, 380 U.S. 609, 615, 85 S. Ct. 1229, 1233, 14 L. Ed. 2d 106 (1965); *United States v. Dula*, 989 F.2d 772, 776 (5th Cir.), *cert. denied*, ___ U.S. ___, 114 S. Ct. 172, 126 L. Ed. 2d 131 (1993). This protection extends to "oblique comments on a defendant's failure to testify, if sufficiently

suggestive." *United States v. Driscoll*, 454 F.2d 792, 800 (5th Cir. 1972).

"The test for determining whether a prosecutor's remarks constitute a comment on a defendant's silence is a twofold alternative one: `(1) whether the prosecutor's manifest intent was to comment on the defendant's silence or (2) whether the character of the remark was such that the jury would naturally and necessarily construe it as a comment on the defendant's silence.'" *United States v. Collins*, 972 F.2d 1385, 1406 (5th Cir. 1992) (quoting *United States v. Jones*, 648 F.2d 215, 218 (5th Cir. 1981)), *cert. denied*, ___ U.S. ___, 113 S. Ct. 1812, 123 L. Ed. 2d 444 (1993). "Both the intent of the prosecutor and the character of the remarks are to be determined by reviewing the context in which they occurred." *Jones*, 648 F.2d at 218.

"As to the first possibility, the prosecutor's intent must be `manifest'; in other words, the test is not met `if some other explanation for his remark is equally plausible.'" *Collins*, 972 F.2d at 1406 (quoting *United States v. Rochan*, 563 F.2d 1246, 1249 (5th Cir. 1977)). "As to the second, `the question is not whether the jury possibly or even probably would view the challenged remark in this manner, but whether the jury *necessarily* would have done so.'" *Collins*, 972 F.2d at 1406 (quoting *United States v. Carrodeguas*, 747 F.2d 1390, 1395 (11th Cir. 1984), *cert. denied*, 474 U.S. 816, 106 S. Ct. 60, 88 L. Ed. 2d. 49 (1985).

During his closing, the prosecutor argued as follows:

> Well, you know that Mr. Mackay skipped out of town pretty quick. But he called. He made a telephone call, didn't he, with this lawyer, curiously enough, from Missouri, not Dallas. You know he didn't go over to Larry Sandri or the other FBI people and say, hey, wait a minute, you guys just took my backhoe. Here's the piece of paper I've got that I purchased this from. Here's the person. Call this person. He says I got it from him. *You haven't even heard that today, have you? You haven't heard that testimony today. Nobody has come here and said this is where Jamie Mackay got this from.* Here's the piece of paper, folks.

Record on Appeal, vol. 4, at 62 (emphasis added). After the court overruled defense counsel's objection, the prosecutor continued: "Here's the piece of paper that shows he purchased it. No. He calls with his lawyer from Missouri to Billy Davis." Mackay contends that these remarks "were manifestly intended to comment upon Mackay's failure to testify and could only be interpreted by the jury as a comment on Mackay's failure to testify." We disagree.

Placed in context, the prosecutor's comments do not manifest an intent to comment on Mackay's failure to testify, and a jury would not necessarily have construed the remarks to refer to Mackay's failure to testify. The sentences immediately preceding the highlighted comments clarify the antecedent of "that" and "that testimony." Mackay interprets "that" to mean testimony by the defendant, but as the context of the remarks makes clear, "that" refers to testimony by "this person." "This person," in turn, refers to the person who sold Mackay the backhoe.

Read in context, the prosecutor's remarks simply argue to the jury that the defense failed to produce evidence, such as a sales receipt or testimony of the seller, to establish the origin of the backhoe. "It is not error to comment on the defendant's failure to produce evidence on a phase of the defense upon which he seeks to rely." *United States v. Dula*, 989 F.2d 772, 777 (5th Cir. 1992), *cert. denied*, ___ U.S. ___, 114 S. Ct. 172, 126 L. Ed. 2d 131 (1993). Here, the defense theory was that Mackay purchased the backhoe from Cole,[6] and it was not improper for the prosecutor to point out that the defense offered no direct evidence to prove that theory. In this respect, this case resembles *Dula*. The defendant's theory in *Dula* was that the questionable activity was instigated and directed by a rival corporation, and the prosecutor argued in closing, "There's been nobody on this witness stand that really knows about what happened between PRC and Accrabond Corporation." *Id.* at 776. We explained that "the government's argument to the jury that `no one has given you any reasonable explanation' in response to the defendant's contentions is not error." *Id.* at 777. Similarly here, the government's argument that Mackay failed to produce evidence of the legitimate sale to

---

[6]     In her opening statement at trial, defense counsel explained that "Jamie Mackay entered into an agreement with an individual to sell a backhoe. . . . Jamie got the backhoe from Bill Cole. The evidence will show that Jamie carefully checked into the status of the backhoe. He wanted to be sure that it wasn't hot. He had some problems before. We're going to talk all about that during trial." Record on Appeal, vol. 3, at 43.

which defense counsel referred in her opening statement did not impermissibly comment on Mackay's failure to take the stand.[7]

C

Finally, Mackay challenges the district court's assessment of a four-level enhancement under former U.S.S.G. § 2B1.2(b)(4)(A) (Nov. 1992).[8]  He contends that the evidence is insufficient to support a finding that Mackay was "in the business of receiving and selling stolen property" as required by the guideline.  We review challenges to factual findings under the guidelines for clear error.  *See United States v. Carreon*, 11 F.3d 1225, 1230 (5th Cir. 1994).  The district court may base the findings underlying its sentence on facts in the record that have been proven by a preponderance of the evidence.  *See United States v. Castro*, 889 F.2d 562, 570 (5th Cir. 1989), *cert. denied*, 493 U.S. 1092, 110 S. Ct. 1164, 107 L. Ed. 2d 1067 (1990).

Mackay argues, and the government agrees, that the enhancement provision applies only to "fences," i.e. those in the business of

---

[7] Our holding in this case does not mean that if the defense offers a theory that is unsupported by the evidence, the prosecutor can argue to the jury that because the defendant failed to testify in support of that theory he must be guilty.  The crucial distinction here is between comments on the failure by the *defense* to offer evidence (including testimony of third persons) and the failure of the defendant to testify.  *See United States v. Wade*, 931 F.2d 300, 305 (5th Cir. 1991) ("It is well settled that, while the `fifth amendment prohibits a prosecutor from commenting directly or indirectly on a defendant's failure to testify,' a `prosecutor may comment . . . on the failure of the defense, as opposed to the defendant, to counter or explain the evidence.'") (quoting *United States v. Borchardt*, 809 F.2d 1115, 1119 (5th Cir. 1987)).

[8] Section 2B1.2(b)(4)(A) was deleted by consolidation with § 2B1.1 effective November 1, 1993.  *See* Amendment 481, U.S.S.G. App. C at 304-05.  The new provision provides:  "If the offense involved receiving stolen property, and the defendant was a person in the business of receiving and selling stolen property, increase by 4 levels."  U.S.S.G. § 2B1.1(b)(5)(B) (Nov. 1993).

receiving and selling property *stolen by others*. *See United States v. Esquivel*, 919 F.2d 957, 960 (5th Cir. 1990), *cert. denied*, ___ U.S. ___, 112 S. Ct. 217, 116 L. Ed. 2d 202 (1991) ("It is because *someone else* stole the shoes sold by Esquivel that . . . the fencing operation falls within the intended purview of the background to and text of former section 2B1.2(b)(3)(A).") (emphasis in the original).[9] We have also held that an offense level enhancement under former § 2B1.2(b)(4)(A) does not require a finding that the defendant previously engaged in fencing activities. *See Esquivel*, 919 F.2d at 961 ("We hold that a finding that a defendant has previously engaged in fencing activities is not a prerequisite for offense level enhancement under former sentencing guideline section 2B1.2(b)(3)(A)."). In *Esquivel*, we emphasized the sophistication of Esquivel's sales in concluding that evidence of prior fencing activities was not required. *Id.* at 960.[10] In this case Mackay transported the backhoe to Dallas to sell it, advertised the sale, and arranged for the goods to be shown to interested buyers. These activities are sufficient to

---

[9] Former § 2B1.2(b)(3)(A), interpreted in *Esquivel*, was renumbered as § 2B1.2(b)(4)(A), but not substantively changed, effective November 1, 1990. *See* Amendment 312, U.S.S.G. App. C at c.167 (Nov. 1990).

[10] We also noted that Esquivel's sales were to multiple customers. *Esquivel*, 919 F.2d at 960. Esquivel took possession of a shipment of 350 boxes of sneakers and sold the sneakers by the pair. Selling one lot of stolen sneakers in small bunches to many customers does not differ in any relevant respect from selling a large piece of stolen construction machinery to one customer. Mackay is no less in the business of fencing stolen property than he would be had he disassembled the backhoe and sold it to various customers as spare parts to multiple customers.

support a finding that Mackay was "in the business of" fencing stolen property.[11]

Mackay argues that the record does not support a finding that he sold the backhoe without stealing it himself: "The implication of the government's case against Mackay was that Mackay *himself* stole, or was involved in the theft of, the equipment at issue." This implication is not sufficient, however, to constitute proof that Mackay stole the backhoe himself. Although the issue was contested, there was sufficient evidence on which the district court could find that Mackay bought the backhoe from Bill Cole, knowing it to be stolen, before transporting it to Texas.[12]

The uncertain origin of the backhoe distinguishes this case in one respect from the two cases on which Mackay primarily relies. In *United States v. Braslawsky*, 913 F.2d 466, 468 (7th Cir. 1990),

---

[11] The government cites statements in Mackay's Presentence Report that describe Mackay's career as a dealer in stolen construction equipment. Although we have held that a presentence report generally bears sufficient indicia of reliability to be considered as evidence by the trial judge in making factual determinations required by the sentencing guidelines, *see United States v. Alfaro*, 919 F.2d 962, 966 (5th Cir. 1990), Mackay attacks the reliability of those statements on a variety of grounds. We do not reach these contentions, however, because we find sufficient evidence in the trial record alone to support the judge's findings.

[12] Mackay's father testified that Mackay told him he purchased the backhoe from Bill Cole. Our holding that sufficient evidence supported a finding that Mackay bought the backhoe from Bill Cole may seem inconsistent with our holding, *supra*, that Mackay did not conspire with Cole. The holdings are not contradictory, however, for two reasons. First, at sentencing, the Government must prove facts only by a preponderance of the evidence. *See United States v. Casto*, 889 F.2d 562, 570 (5th Cir. 1989), *cert. denied*, 493 U.S. 1092, 110 S. Ct. 1164, 107 L. Ed. 2d 1067 (1990). In contrast, under our standard for sufficiency of the evidence supporting a *conviction*, we require that a rational trier of fact could find that the Government proved all essential elements of the crime beyond a reasonable doubt. *See United States v. Castro*, 15 F.3d 417, 419 (5th Cir. 1994). Second, the testimony of Mackay's father that Mackay told him he bought the backhoe from Cole directly supports the finding that Mackay bought the backhoe, but it does not support even an inference that Cole and Mackay agreed to transport the stolen backhoe interstate.

the record was clear that the defendants themselves stole the goods they sold, and the court held that the guideline does not apply to thieves who sell their own stolen goods. In *Esquivel*, we followed *Braslawsky* and upheld a sentence enhancement in a case in which the record showed that the defendant bought the stolen goods from another person. 919 F.2d at 959-60. In this case, where evidence both supported and contradicted the conclusion that the defendant acquired the stolen backhoe from a third person, the district court did not commit clear error in finding that Mackay was "in the business of receiving and selling stolen property" under former U.S.S.G. § 2B1.2(b)(4)(A).

### III

For the foregoing reasons, we REVERSE Mackay's conviction for conspiracy to transport stolen goods and AFFIRM his conviction for knowing transportation of stolen goods.[13]

---

[13] We do not remand for resentencing because Mackay's two counts merged under the guidelines. *See* Record on Appeal, Presentence Report, at 4; U.S.S.G. § 3D1.2(d) (Nov. 1992).