# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

―――――――――――――――

No. 02-60125

―――――――――――――――

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

REGINALD WAYNE IKNER, also
known as "Reggie,"

Defendant-Appellant.

―――――――――――――――――――――――――――――

Appeal from the United States District Court
For the Southern District of Mississippi
(No. 3:98-CR-53-ALL-LN)

―――――――――――――――――――――――――――――

October 10, 2002

Before GARWOOD and CLEMENT, Circuit Judges, and RESTANI, Judge.[*]

PER CURIAM:[**]

Reginald Wayne Ikner ("Ikner") appeals his conviction for violating 21 U.S.C. § 841(a)(1), 18 U.S.C. § 2, possession with intent to distribute cocaine base ("crack") and his conviction for violating 18 U.S.C. § 924(c)(1), knowingly using and carrying a firearm during and in relation to a drug trafficking crime. Ikner claims that the district court erred by: (1) denying his motion to

―――――――――――――――

[*]Judge of the United States Court of International Trade, sitting by designation.

[**]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.

suppress; (2) finding that the evidence was sufficient to support a finding of knowing possession; (3) allowing the prosecution to use "drug profile" evidence; (4) allowing the prosecution to make improper arguments in its closing argument; and (5) calculating his sentence in violation of Apprendi. We disagree and affirm.

## I. BACKGROUND

On June 18, 1998, at 11:16 p.m., Madison County Mississippi Deputy Sheriff Robert Sanders ("Sanders") stopped a vehicle on Interstate 55 driven by John Cornelius Fowler ("Fowler") in which Reginald Wayne Ikner ("Ikner") was a passenger. Sanders stopped the vehicle for two traffic violations: (1) the issuing state's name on the vehicle's rear tag was obscured in violation of Mississippi's license tag statute;[1] and (2) the vehicle weaved to the center line on the highway to the fog line and back again, in violation of Mississippi's careless driving statute.[2]

When Sanders informed defendants that he stopped them because their rear tag was partially obscured, Fowler acknowledged that another officer had stopped them earlier in Grenada, Mississippi for the same reason. Ikner claimed that they did not have a screwdriver to fix the tag. Sanders then requested identification from the two occupants.

As Sanders spoke with the defendants, he observed a 200-gram scale weight and an unopened jar of gourmet mustard on the front seat. Based on his drug enforcement training, Sanders recognized the weight and the mustard as items used in the drug trade.

Sanders engaged the defendants in conversation. Ikner and Fowler told Sanders that they traveled from Fort Worth, Texas to see friends and gamble in Tunica, Mississippi, and that they

---

[1]Mississippi Code Ann. § 27-19-31 (1996).

[2]Mississippi Code Ann. § 63-3-1213 (1993).

2

dropped a friend off in Durant, Mississippi. The defendants explained that they were going to stay in the Comfort Inn that night and go back to Fort Worth the next day. Sanders asked the defendants whether they had "done any good" at the casino. The defendants made statements indicating that they had not been successful.

Before returning to his patrol car, Sanders inquired about the owner of the vehicle. After some hesitation, the defendants replied that the car belonged to "a friend," but never gave more specific information.

While waiting for confirmation on the defendants' identification, Sanders returned Ikner and Fowler's identification documents. He informed them that he was running their identification and that they would be free to leave if everything checked out. Sanders then asked the defendants whether they had anything illegal, such as drugs, large sums of money, or weapons in the car. The defendants replied that they did not, but agreed to allow Sanders to search the car. Ikner opened the trunk for Sanders to search.

Upon conducting a thorough protective search, Sanders found $2,000 on Ikner in two stacks of $1,000 each. Sanders recognized that the stacks were bound with rubber bands similar to the manner in which drug traffickers bind money for quick counting. The search of Fowler's pockets revealed $2,000 similarly wrapped. Sanders found a total of $6,274 on the defendants. When Sanders referred to the defendants' earlier claim that they had been unsuccessful at the casino, the defendants contended that they had merely "broken even."

Officer Mike Cox ("Cox") arrived on the scene to assist by watching the defendants while Sanders conducted the protective search. Sanders then proceeded to search of the vehicle. Sanders found a tool box in the trunk containing a screwdriver, contrary to Ikner's earlier claim. Sanders

noticed that the defendants appeared nervous when he left the trunk area and began to focus on other parts of the vehicle. Cox noticed that Fowler's chest began "rising and falling," but Ikner appeared "not as nervous as Mr. Fowler." While searching the interior, Sanders noticed a loose ashtray, which eventually led him to find different colored paint inside the vent plate.

The dispatcher informed Sanders that it would take additional time to run the Texas files. Sanders then removed his K-9 partner from the patrol car to conduct a sniff search of the vehicle. Sanders' dog alerted on the passenger side rear quarter panel. When Sanders and Cox looked inside the rear quarter panel, it revealed a compartment containing crack cocaine and a gun smeared with mustard. Sanders arrested Ikner and Fowler.

Later, a search on the driver's side revealed a similar compartment with two additional guns and crack cocaine. Sanders also discovered a loaded ammunition clip in the "sunglasses compartment" on the ceiling panel between the sun visors. They found another jar of mustard, similar to that found on the first gun.

A jury convicted Fowler and Ikner on one count of knowingly and intentionally possessing with intent to distribute five and one-half pounds of crack cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. The jury also convicted them of one count of knowingly using and carrying a firearm during and in relation to a drug trafficking crime under 18 U.S.C. § 924(c)(1). Ikner was sentenced to 235 months on Count 1 and 60 months on Count 2, to run consecutively. He was also sentenced to five years of supervised release.

Ikner filed motions for a copy of the transcript and to proceed *in forma pauperis*, but failed to file a timely appeal. This Court dismissed Ikner's appeal for lack of appellate jurisdiction on June 13, 2000. Subsequently, Ikner filed a Motion to Vacate in district court alleging that his counsel was

4

ineffective in failing to timely file the notice of appeal. On February 19, 2002, the district court granted Ikner an out-of-time appeal and appointed counsel to represent him. Ikner now appeals his convictions on both count 1 of the drug possession charge and count 2 of the firearms charge.

## II. ANALYSIS

### A. Motion to Suppress

When reviewing whether the district court erred in overruling a motion to suppress, we examine the findings of fact for clear error and the conclusions of law *de novo*. United States v. Zucco, 71 F.3d 188, 190 (5th Cir. 1995). We view all evidence in the light most favorable to the government, unless inconsistent with the trial court's findings or if found to be clearly erroneous after considering the evidence as a whole. Id.

Under Terry v. Ohio, 392 U.S. 1 (1968), a routine traffic stop must be justified at its inception, and an officer may make a limited seizure so long as the officer can point to specific facts which, "taken together with rational inferences from those facts, reasonably warrant" the seizure. Id. at 19-21. The stop itself must be "no longer than is necessary to effectuate the purpose of the stop," and the "scope of the detention must be carefully tailored to its underlying justification." Florida v. Royer, 460 U.S. 491, 500 (1983). When an officer questions and conducts a consensual search while waiting for results of a computer check, the detention is still considered justified by the facts justifying the initial traffic stop. See Zucco, 71 F.3d at 190; United States v. Shabazz, 993 F.2d 431, 437 (5th Cir. 1993). Consent to search must be free and voluntary to be valid. United States v. Olivier-Becerril, 861 F.2d 424, 425 (5th Cir. 1988).

Appellant argues that the initial stop was invalid because the obscured tag and weaving were not violations of Mississippi law, and the invalid stop tainted the subsequent consent to search.

Alternatively, Appellant contends that even if the stop was valid, the circumstances surrounding the search and seizure exceeded the scope of a routine traffic stop and resulted in a *de facto* arrest. Appellant maintains that as a result, Ikner's consent was not voluntary.

Both the obscured tag and the weaving between lanes were violations of the Mississippi law, and therefore justified the traffic stop. See Mississippi Code Ann. § 27-19-31 (1996); Mississippi Code Ann. § 63-3-1213 (1993); United States v. Escalante, 239 F.3d 678, 681 (5th Cir. 2001); United States v. Thomas, 12 F.3d 1350, 1366 (5th Cir. 1994). Moreover, the stop did not result in a *de facto* arrest. Only eight minutes elapsed between the initial stop and the moment when Sanders returned the defendants' identification documents, informed them that they would be free to leave as soon as their identification checked out, and asked for permission to search. The defendants gave their consent while the detention was still justified by the facts justifying the initial stop. See Zucco, 71 F.3d at 190-91 (rejecting argument of *de facto* arrest from roadside detention based on elapsed time of nine minutes from initial stop to consent to search while waiting for computer check); Shabazz, 993 F.2d at 434 (finding detention did not exceed original scope of traffic stop because officers were still waiting for results of computer check at time they received consent to search the vehicle). Accordingly, the consent was not tainted by a prior illegality, and therefore was valid. Thus, the district court did not err in denying Ikner's motion to suppress.

**B. Sufficiency of the Evidence**

When assessing the sufficiency of the evidence in a criminal case, we examine whether a reasonable trier of fact, viewing all evidence and all reasonable inferences in the light most favorable to the government, could have found that the evidence established guilt beyond a reasonable doubt.

6

See United States v. Smith, 296 F.3d 344, 346 (5th Cir. 2002); United States v. Mergerson, 4 F.3d 337, 341 (5th Cir. 1993). This standard applies whether the evidence is direct or circumstantial. Mergerson, 4 F.3d at 341. The conviction must be reversed if the evidence, viewed in the light most favorable to the government, equally supports a theory of guilt and a theory of innocence. United States v. Sanchez, 961 F.2d 1169, 1173 (5th Cir. 1992).

To sustain a conviction for the drug possession charge under 21 U.S.C. § 841(a)(1), the evidence must show beyond a reasonable doubt that Ikner: (1) (knowingly; (2) possessed cocaine base; (3) with intent to distribute. United States v. Ortega-Reyna, 148 F.3d 540, 543 (5th Cir. 1998); United States v. Resio-Trejo, 45 F.3d 907, 911 (5th Cir. 1995). Under United States v. Canada, 459 F.2d 687, 688-89 (5th Cir. 1972), even if a passenger lacks the requisite control over the vehicle to show constructive possession, knowledge that the contraband is present in the vehicle is sufficient to support a finding of possession. This Circuit regards certain types of behavior as circumstantial evidence of guilty knowledge: (1) nervousness; (2) absence of nervousness; (3) failure to make eye contact; (4) refusal or reluctance to answer questions; (5) lack of surprise when police discover contraband; (6) inconsistent statements; (7) implausible explanations; (8) possession of large amounts of cash; and (9) obvious or remarkable alterations to the vehicle, especially when the defendant had been in possession of the vehicle for a substantial period of time. Ortega-Reyna, 148 F.3d at 544.

Appellant urges that he neither knew that the car had a secret compartment containing crack cocaine and weapons, nor did he constructively possess the contraband because he was merely a passenger in the car.

The knowledge element is the crux of this issue. Under Canada, 459 F.2d at 688-89, a finding

7

of guilty knowledge on the part of a vehicle's passenger is sufficient to support a finding of possession. Therefore, applying the Ortega-Reyna factors viewed in the light most favorable to the prosecution, it is clear that Ikner knowingly possessed the contraband.

With regard to the first Ortega-Reyna factor, although Cox testified that Ikner appeared "not as nervous" as Fowler, Sanders indicated that both defendants became increasingly nervous as he left the trunk area to search the other areas of the car. The Ortega-Reyna factor concerning reluctance to answer questions also supports a finding of guilty knowledge in this case: while neither defendant refused to answer questions, they hesitated in answering all of Sanders' inquiries, and specifically failed to identify the owner of the vehicle. The defendants' inconsistent statements also support a finding of knowledge. Ikner claimed that they did not fix their rear tag because they did not have a screwdriver, yet Sanders found a tool kit containing a screwdriver in the trunk. Additionally, defendants made statements indicating that they had not done well at the casino, but Sanders discovered a total of $6,274 on the defendants. The defendants' claim that they had merely broken even appears inconsistent with possession of such a large sum.

The defendants' explanation of how they came to possess a car containing $500,000 worth of crack cocaine is implausible, which further suggests guilty knowledge. It is highly unlikely that "a friend" would be willing to loan a car to the defendants to drive from Fort Worth to gamble in Tunica, Mississippi, with a stop in Durant, and then leave the car at an airport, without notifying them that the vehicle contained $500,000 worth of crack cocaine.

Applying the eighth Ortega-Reyna factor, the defendants' possession of such a large sum of cash supports a finding of guilty knowledge. Although appellant contends that the $6,274 was the

8

result of "breaking even" at the casino, the manner in which the cash was bound suggests otherwise. It is also telling that neither defendant made an attempt to claim interest in the cash after given notice of its seizure.

Finally, while there may not have been obvious alterations to the vehicle, the presence of the scale weight, mustard jar, and the loaded ammunition clip in visible areas of the interior of the car suggests guilty knowledge. The visible presence of these items combined with the fact that the defendants possessed the vehicle for a substantial period of time, makes it clear that they were aware of the presence of the contraband.

Given these factors, viewed in the light most favorable to the government, it is clear that the evidence was sufficient to support a finding of Ikner's guilty knowledge. As such, the evidence is sufficient to sustain Ikner's conviction of possession with intent to distribute cocaine base.

## C. Drug Profile Testimony

This Court reviews evidentiary rulings on expert testimony under an abuse of discretion standard. See Moore v. Ashland Chem., Inc., 151 F.3d 269, 274 (5th Cir. 1998)(en banc). However, if the party challenging the ruling does not make a timely objection, the plain error standard applies. United States v. Polasek, 162 F.3d 878, 883 (5th Cir. 1998).

### 1. Alleged Drug Courier Profile Testimony

Appellant asserts the prosecution presented drug courier profile evidence when its witnesses testified that the defendants carried money in a manner similar to drug traffickers, and that the defendants appeared nervous when Sanders began searching the car.

The government may not introduce a drug courier profile as substantive evidence of a

9

defendant's guilt.  United States v. Williams, 957 F.2d 1238, 1241 (5th Cir. 1992); see United States v. Speer, 30 F.3d 605, 610 n.3 (5th Cir. 1994).  One or two elements, however, do not constitute a drug profile.  See United States v. Washington, 44 F.3d 1271, 1283 n.44 (5th Cir. 1995) (noting that narcotics agents may testify about the significance of certain methods of operation of the drug distribution business).

This case is distinguishable from  Williams, 957 F.2d at 1241, cited by appellant.  Whereas the prosecution in Williams compared the defendant to a list of elements characterizing drug traffickers, the prosecution in this case merely told the jury that the defendants banded their money in a manner consistent with drug dealers and appeared to become nervous when the search focused on the area of the car containing the drugs.  Furthermore, defense counsel brought up the concept of profile evidence, while the prosecution tried to emphasize that the officers made their conclusions based on all of the evidence taken together rather than a drug courier profile.  It is clear that the evidence presented by the prosecution does not constitute the type of drug courier profile evidence forbidden in Williams.

## 2.    Non-Profile Expert Opinion Testimony

In addition to drug courier profile evidence, appellant contends that the government presented improper expert testimony when Sanders testified that drug traffickers band their money in $1,000 stacks, and that it would "seem odd . . . to loan out a car with that much crack cocaine in it." Appellant further asserts that Cox's testimony, offered over objection, regarding the street value of the crack was improper.

Appellant concedes that both officers Sanders and Cox are qualified as experts in the drug

enforcement field. Under Federal Rule of Evidence 702, expert witnesses may express opinions or inferences that will assist the trier of fact in understanding evidence or determining a fact in issue. United States v. Buchanan, 70 F.3d 818, 832 (5th Cir. 1996). Testimony by experienced narcotics agents has often been fo und helpful in assisting the trier of fact in understanding evidence. Id.; Washington, 44 F.3d at 1283.

In contesting the evidence presented by Sanders regarding the stacks of $1,000, appellant argues that the prosecution should have shown that the officers' process or technique was reliable in reaching their conclusion. Yet, observing an individual's behavior does not involve a scientific process or technique. It involves training and experience. Consequently, the finding of a reliable process or technique would not be relevant. Moreover, testimony regarding a drug trafficker's method of banding his money would be more probative than prejudicial because it would help a jury with facts that would not be within their common experience. See Buchanan, 70 F.3d at 832-33.

Appellant maintains that Sanders' non-responsive answer during cross-examination in which he stated that it seemed "odd" for someone to loan a car with "that much crack cocaine in it" was improper evidence. The defense did not object to this statement. In fact, Sanders' answer came after defense counsel pressed him for his opinion about the situation and inquired whether it would lead Sanders to conclude that "laymen" would know there were drugs in the car. This situation is similar to that in Buchanan, 70 F.3d at 832, where an officer testified that it would be "unreasonable for persons trafficking crack cocaine worth $30,000 to have an uninvolved 'outsider' in the car." Id. at 832, n.16. Like the officer in Buchanan, Sanders merely stated his opinion based on facts that he personally observed in light of his own experience. See Id. at 663 n.5.

11

Finally, appellant challenges Cox's testimony regarding the street value of the crack cocaine. Cox testified that he received training in undercover cocaine buys as part of his special drug investigation training, and that he had bought cocaine only a week and a half before testifying. It is clear that Cox's testimony was proper because an experienced narcotics agent may testify about the significance of certain conduct or methods of operation unique to the drug distribution business. Washington, 44 F.3d at 1283, n.5.

We find that the district court did not abuse its discretion and did not commit plain error in admitting the alleged profile evidence and the officers' opinion evidence.

## D.  Prosecutor 's Alleged Improper Closing Argument

### 1.  Prosecution's Alleged Comment on Ikner's Failure to Testify

We review *de novo* whether a prosecutor's argument is an impermissible comment on an accused's right not to testify.  United States v. Morrow, 177 F.3d 272, 299 (5th Cir. 1999).

A two-prong test applies to determine whether a prosecutor's argument is improper: (1) whether the prosecutor's manifest intent was to comment on the defendant's silence; or (2) whether the character of the remark was such that the jury would naturally and necessarily construe it as a comment on the defendant's silence.  Id. (citing United States v. Mackay, 33 F.3d 489, 495 (5th Cir. 1994)).  The test applies in light of the context of the prosecutor's remarks.  See United States v. Collins, 972 F.2d 1385, 1407-08 (5th Cir. 1992).

While appellant asserts that the comments in the prosecution's closing arguments were attempts to draw attention to the defendants' failure to testify, the government contends that the prosecution was merely highlighting the fact that the defense failed to follow through on promises

it made in its opening argument.

Viewing the prosecutor's closing argument in context, the government's assertion is correct. A prosecutor may comment on the failure of the defense to follow through on opening statement promises. United States v. Zanabria, 74 F.3d 590, 592-93 (5th Cir. 1996); Mackay, 33 F.3d at 496. Moreover, it is perfectly acceptable for a prosecutor to point out where there is lack of evidence supporting a defense or where government evidence has not been explained. See United States v. Driscoll, 454 F.2d 792, 801 (5th Cir. 1972). Considering the prosecutor's comments in this context, it is clear that it was not the prosecutor's manifest intention to comment on the defendants' failure to testify.

It is also not clear from a review of the record or from appellant's brief how the prosecutor's comments, viewed in context, would naturally lead a jury to understand that the prosecutor was commenting on the defendants' silence. Thus, we find that the prosecution did not improperly comment on Ikner's failure to testify.

## 2. Prosecutor 's Alleged Inflammatory Closing Argument

When determining whether a prosecutor's comments constituted prosecutorial misconduct warranting reversal, we examine: (1) whether the prosecutor's remarks were improper and harmful; and (2) whether the remark affected the substantial rights of the defendant. United States v. Lowenberg, 853 F.2d 295, 301-02 (5th Cir. 1988). In determining whether the defendant's substantial rights were harmed, this Court analyzes: (1) the magnitude of the prejudicial effect; (2) the efficacy of any cautionary instructions; and (3) the strength of the evidence of the defendant's guilt. Id.

13

Appellant argues that the prosecutor's comments were inappropriate and harmful because he suggested that the jurors should convict to "make a statement against narcotics crimes." United States v. Pupo, 841 F.2d 1235 (4th Cir. 1988). Appellant, however, fails to address the second part of the inquiry–how the alleged inflammatory comments harmed his substantial rights.

We have repeatedly found that vigorous calls for law enforcement are generally permissible so long as the jury is directed to convict on the specific evidence at hand.[3] Ikner fails to show that the government's remarks were more harmful than other vigorous calls for law enforcement that this Court has approved. Alternatively, even if the comments were inflammatory, Ikner's substantial rights were not affected. Any possible prejudicial effect was likely minimal because the comments only consisted of 8 lines in a 21-page closing argument. The court did not give instructions on these specific remarks, however its other instructions helped to mitigate any possible prejudice. United States v. Wyly, 193 F.3d 289, 299 (5th Cir. 1999). Furthermore, the evidence of guilt was strong enough to convict. As such, we find that the government's remarks do not warrant reversal.

**E. Sentencing Error Under Apprendi**

When a defendant fails to complain to the district court regarding his sentencing, we apply plain error review. United States v. Vasquez, 216 F.3d 456, 459 (5th Cir. 2000). To vacate the

---

[3]See, e.g., United States v. Brown, 887 F.2d 537, 542 (5th Cir. 1989) (holding permissible comment by prosecution that "[d]rugs are a terrible thing and they are ruining society . . . [a]nd it's up to you to do something about it."); Jones v. Butler, 864 F.2d 348, 360 (5th Cir. 1988) ("People in society, especially children . . . have a right in this society to be able to go to bed in their homes at night and feel safe and secure, to not have to worry about people breaking in and taking them out into the night and killing them."); United States v. Caballero, 712 F.2d 126, 131 (5th Cir. 1983) (upholding comment: "you have a chance today to say something about what kind of county we are going to have . . . and what kind of society we are going to live and bring up our children in").

14

defendant's sentence under this standard, there must be: (1) error; (2) that is plain; and (3) that affects substantial rights. United States v. Cotton, 122 S.Ct. 1781, 1784 (2002). If all three conditions are met, an appellate court may address the forfeited error only if "the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id.

The indictment charges that Ikner possessed with intent to distribute "approximately five and one-half (5 ½) pounds of cocaine base." Ikner argues that although the jury and the judge failed to find beyond a reasonable doubt that he actually possessed five and a half pounds of crack, the court calculated his sentence based on that particular quantity in contravention of Apprendi v. New Jersey, 530 U.S. 466 (2000). The government concedes that the jury failed to make this finding.

In United States v. Cotton, 122 S.Ct. 1781, the Supreme Court found that while it was plain error under Apprendi when the indictment failed to list the quantity of the drugs, they would nevertheless uphold the defendants' life sentences because the error did not seriously "affect the fairness, integrity, or public reputation of judicial proceedings." Id. at 1787. The Court noted that because evidence of the quantity of drugs was "overwhelming" and "essentially uncontroverted," the fairness, integrity and reputation of the judicial proceedings were not compromised. Id. at 1786-87. The same is true in the instant case. The drugs were present at Ikner's trial for the jury's consideration and the defense stipulated that the drugs found were crack cocaine. By simple observation, the jury could not have concluded that the drugs weighed 50 grams or less.

Even if there was plain error, the error was harmless. As this Court found in United States v. Slaughter, 238 F.3d 580 (5th Cir. 2000), it is harmless error when evidence offered at trial supports the finding of a particular drug quantity and the jury has the indictment with the drug quantity

15

listed–even if the court did not instruct the jury to find the quantity beyond a reasonable doubt. See id. at 583-84. The circumstances are nearly identical here. Thus, even if the court committed plain error in failing to find the drug quantity beyond a reasonable doubt, it was harmless error and we affirm Ikner's sentence.

### III. CONCLUSION

For the foregoing reasons, we conclude that the district court was correct in denying appellant's motion to suppress; appellant's conviction under 21 U.S.C. § 841(a)(1), 18 U.S.C. § 2, and 18 U.S.C. § 924(c)(1) is adequately supported by the evidence; the prosecution did not use "drug courier" profile evidence; the prosecution did not make improper arguments in its closing statement; and the district court did not err in enhancing appellant's sentence under Apprendi. We therefore affirm.