**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

---

No. 01-31359

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ALVIN C. GREEN, also known as Bones, also known as Shaka,

Defendant-Appellant.

---

Appeal from the United States District Court
for the Middle District of Louisiana

---

March 11, 2003

Before GARWOOD, JONES and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Alvin C. Green ("Green") appeals various procedural rulings by the district court. For the following reasons, we affirm in part and reverse in part.

FACTUAL AND PROCEDURAL BACKGROUND

From June through August 1999, pursuant to court authorization, law-enforcement agents intercepted telephone conversations occurring over two cellular phones used by Green. The intercepts graphically depicted Green's drug trafficking and money laundering activities. On January 27, 2000, two law enforcement officers, armed with a parole warrant, arrested Green. One of the officers

conducted a warrantless search of Green's automobile and recovered a .357 caliber revolver.[1] On April 5, 2000, Green was indicted on the following charges: Count I, conspiracy to possess with the intent to distribute and to distribute cocaine and 50 grams or more of cocaine base in violation of 21 U.S.C. § 846; Count II, distribution of 50 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1); Counts IV and V, engaging in a monetary transaction using criminally derived property, in violation of 18 U.S.C. § 1957; Counts VI through IX, unlawful use of a communications facility, in violation of 18 U.S.C. § 843(b); and Count X, possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). The Go vernment filed two superceding indictments which amended Counts I, II, and X to include, among other things, Green's prior drug and felony convictions.

Both parties filed a number of pre-trial motions. Relevant to this appeal, the district court denied Green's motion to suppress the warrantless search of his vehicle. The district court granted the Government's motion to authenticate the intercepted wiretaps and to use the corresponding transcripts.[2] The case proceeded to a jury trial. During the trial, the district court denied Green's request to sequester Special Agent Mark Lusco ("Lusco"), and Task Force Agent Rudy Babin, ("Rabin," collectively with Agent Lusco, "DEA agents") from being present in the courtroom. The district court further denied Green's request to prevent the DEA agents from serving as expert witnesses. Finally, the district court overruled Green's objection calling for a mistrial based on comments made by the prosecutor in his rebuttal.

---

[1]The details of the search are discussed infra.

[2]Of no significant relevance to this appeal, Green's motion to strike his prior felony and drug convictions from the two superseding indictments was granted.

2

On April 19, 2001, the jury found Green guilty on all counts. Green was sentenced to life imprisonment on Counts I, II, and X, ten years on Counts IV and V, and eight years on Counts VI through IX, with all terms to be served concurrently. Green appeals the district court's procedural rulings. Green also moves for a new trial claiming that the district court committed plain error by failing to sever Count X from the remaining counts of the indictment.

## DISCUSSION

I.      Warrantless Search

Green contends that the district court erred by failing to suppress the firearm recovered during the warrantless search of his vehicle. When reviewing a district court's ruling on a motion to suppress, we review questions of law de novo and factual findings for clear error. See United States v. Vasquez, 298 F.3d 354, 356 (5th Cir. 2002).

The facts of Green's arrest are as follows. Armed with a warrant based on a parole violation, two law enforcement officers, followed Green from a location to his residence. When the officers pulled into his driveway, Green was on his front door steps, around twenty-feet from his vehicle. After the officers parked their car, they announced who they were. After they identified Green, they summoned him back to the driveway and placed him on an adjacent automobile in a frisk-type position. Green was initially cooperative. However, when the officers advised Green that he was under arrest for a parole violation, Green broke away and ran. Green was quickly tackled and immediately handcuffed, approximately six to ten feet from his vehicle. As Green was lying on the ground, handcuffed, surrounded by the arresting officer and three other Baton Rouge city police officers called to the scene, another officer searched Green's vehicle and recovered a .357 caliber revolver found protruding from beneath the driver's seat.

3

The district court found that the case was governed by New York v. Belton, 453 U.S. 454 (1981) and denied Green's motion to suppress the firearm. Green asserts that this case is governed by Chimel v. California, 395 U.S. 752 (1969), while the Government asserts that Belton is controlling. We find that neither case is controlling and hold that the district court erred in denying Green's motion to suppress the firearm.

The Supreme Court developed the doctrine of search incident to arrest in Chimel. The Supreme Court held that an officer making a lawful custodial arrest may search the person in custody and the "area 'within his immediate control'" into which he might reach in order to obtain a weapon or to destroy evidence. 395 U.S. at 763. The Supreme Court addressed the applicability of this doctrine to searches of automobiles in Belton. There, the Supreme Court held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." 453 U.S. at 460. The Supreme Court in Belton adopted this bright line rule to avoid case-by-case evaluations of whether the defendant's area of control within the automobile extended to the precise place where the policeman found the weapon or evidence. See 3 WAYNE R. LaFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 7.1 at 136 (Supp. 1982).

Although this Court has not addressed this issue, the decisions from other Circuits are instructive. The Sixth and D.C. Circuits do not apply Belton where the police come upon the arrestee outside of his vehicle. See United States v. Strahan, 984 F.2d 155, 159 (6th Cir. 1993) (declining to apply Belton where the officer first made contact with the defendant after he had exited his automobile and was thirty feet away from his vehicle when arrested); United States v. Fafowora, 865 F.2d 360, 362-63 (D.C. Cir. 1989) (declining to apply Belton to a search of a defendant's automobile

4

where the defendant had parked and was walking in the opposite direction, approximately one car length away, at the time of the arrest).[3] The Seventh Circuit, however, applies Belton where the defendant exited the automobile immediately prior to his arrest. See United States v. Willis, 37 F.3d 313, 317-18 (7th Cir. 1994).

Relying on the Seventh Circuit's reasoning, the Government asserts that Belton is applicable because the search of Green's vehicle occurred shortly after Green exited his vehicle. Given the undisputed facts of this case regarding Green's actions, we do not find the Seventh Circuit's reasoning dispositive. The principle behind Belton and Chimel is to protect police officers and citizens who may be standing nearby from the actions of an arrestee who might gain access to a weapon or destructible evidence. In this case, the officers approached Green after he exited his vehicle and was at his front door steps, around twenty-five feet away from his vehicle. Although Green attempted to flee from the officers, the Government admits that at the time the search occurred, Green was handcuffed and lying face down on the ground surrounded by four police officers, approximately six to ten feet away from his vehicle. The record contains testimony from the officer who searched Green's vehicle that, at the time of the search, Green was "pretty secure" and that he and the other officers did not fear that their life or safety was in danger. Because none of the concerns articulated

---

[3]The Sixth Circuit also applies Belton where the police initiates contact prior to the defendant's exit of the automobile. See United States v. Hudgins, 52 F.3d 115, 119 (6th Cir. 1995) (applying Belton and concluding that the search was proper as a search incident to an arrest where the officer first initiated contact with the defendant while he was still inside his automobile); see also United States v. White, 871 F.2d 42, 44 (6th Cir. 1989). The Seventh and Tenth Circuits apply Belton in cases where the defendant exercises control over the automobile at the time of the arrest despite the fact that he was not in the automobile at that time. See United States v. Sholola, 124 F.3d 803, 817 (7th Cir. 1997) (applying Belton where the defendant's words and conduct linked him to the car and conveyed that the vehicle was his, or at least under his dominion and control despite the fact that the "defendant was not technically an occupant of the vehicle immediately prior to the search"); United States v. Franco, 981 F.2d 470, 472-73 (10th Cir. 1992) (applying Belton where the defendant was arrested in an undercover agent's car near his automobile based on the fact that he accessed his automobile during the transaction which established that he was in control of the automobile at the time of his arrest).

5

in Chimel and Belton regarding law enforcement safety and the destruction of evidence are present in this case, the Government cannot justify the search of Green's vehicle under Belton or Chimel. Accordingly, we conclude that the district court erred in denying Green's motion to suppress the weapon obtained from his vehicle.

II.     Authenticity of Intercepted Wire Communications

To establish authenticity, the Government must demonstrate: 1) the operator's competency, 2) the fidelity of the recording equipment, 3) the absence of material alterations, and 4) the identification of relevant sounds or voices. See United States v. Biggins, 551 F.2d 64, 66 (5th Cir. 1977); United States v. Stone, 960 F.3d 426, 436 (5th Cir. 1992). The party seeking to establish authenticity need not meet all the factors set out in Biggins, if ". . .upon independent examination, the district court is convinced that the 'recording accurately reproduces the auditory experience.'" United States v. Buchanan, 70 F.3d 818, 827 (5th Cir. 1996) (quoting Stone, 960 F.2d at 436). This Court reviews the district court's determination of authenticity of the recordings for abuse of discretion. Id.

Green asserts that the district court erred in finding that his intercepted telephone recordings had been authenticated. Green maintains that the Government failed to demonstrate that the recordings were reliable. Specifically, Green asserts that Agent Lusco and Barry Stewart, the Government's expert witnesses, did not adequately demonstrate how the recording equipment worked, who worked it, what kind of training the operator had, whether the equipment was reliable, and when the recordings were made.

After reviewing the record, we are persuaded that the intercepted telephone recordings accurately reproduce the auditory experience. As one of the case agents overseeing the wiretap

6

operation, expert witness Agent Lusco possessed knowledge of the reliability of the intercepted telephone recordings. Having met Green, Agent Lusco was also able to identify his voice. Although we acknowledge that Agent Lusco was unaware of the specific workings of the equipment and the operator's competency, the record reflects that both he and Agent Rabin listened to each intercepted call and corroborated Green's conversations with his actions on numerous occasions. Thus, we find that the district court did not abuse its discretion when it determined that the intercepted recordings were authenticated and admitted the corresponding transcripts into evidence.

III.    Sequestration of the DEA Agents

Green contends that the district court erred in exempting both DEA agents, from sequestration pursuant to Rule 615 of the Federal Rules of Evidence. This Court reviews a district court's compliance with Rule 615 fo r abuse of discretion, and we will reverse only if Green can demonstrate prejudice. See United States v. Hickman, 151 F.3d 446, 453 (5th Cir. 1998).

During the trial, the Government argued that Rule 615 does not "set forth a limit to the number of case agents that may sit [at its] table." The district court agreed and exempted the DEA agents from sequestration. As noted in Hickman, this Court has never decided whether the Government can designate more than one individual as its case agent, however we have permitted the exemption of more than one case agent from sequestration if their presence is essential to the presentation of the case. See Hickman, 151 F.3d at 453; FED. R. EVID. 615(3);[4].

The Government asserts that the DEA agents' presence was essential to its case given the nature of the investigation. The Government explains that because they are required to run all wiretap

---

[4]Rule 615 does not authorize the exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause.

operations out of New Orleans, the DEA agents, who were located in Baton Rouge, had to split up their review of the intercepted recordings. Thus, the Government asserts that the presence of both agents was necessary because they were slated to testify regarding different intercepted telephone conversations. Upon review of the record, we are not persuaded that this division of responsibility necessarily rendered both DEA agents presence in the courtroom throughout the trial essential to the Government's presentation of its case. The district court likewise does not offer any compelling rationale for why both DEA agents presence was essential to this case.

While we deem the presence of both DEA agents arguably unnecessary, nonetheless because Green has not identified any specific prejudice he suffered because of the DEA agents presence, we decline to find that the district court committed reversible error in exempting them from sequestration.

IV.    DEA Agents' Testimony as Experts

Green contends that the district court erred in allowing the DEA agents to testify as expert witnesses in the areas of drug trafficking and money laundering. Green argues that the DEA agents' testimony was biased and not impartial due to their involvement in the case. Because the basis for Green's objection during trial is different from the theory he now raises on appeal, "plain error" is the standard of review. See United States v. Jimenez, 256 F.3d 330, 340 (5th Cir. 2001) (holding that "where the theory underlying the basis for an appeal is different from the one raised in the lower court, 'plain error' should be the standard of review"). [5]

Rule 702 of the Federal Rules of Evidence provides that a witness qualified as an expert by

_____

[5] The record reflects that Green objected to the DEA agents serving as expert witnesses based on their lack of education and training in the areas of narcotics trafficking and money laundering.

8

knowledge, skill, experience, training or education, may testify in the form of opinion or otherwise if technical or specialized knowledge will assist the jury. The Government asserts that Rule 702 does not prohibit a law enforcement officer, who has investigated the matter at issue, from testifying as an expert. We agree. Furthermore, we find that Green failed to demonstrate how the DEA agents' expert testimony "seriously affected the fairness, integrity, or public reputation of the judicial proceeding." United States v. Longoria, 298 F.3d 367, 371 (5th Cir. 2002). During the trial, Green's counsel could have cross-examined the DEA agents regarding their alleged bias. In fact, Green's counsel attacked the DEA agents' credibility as experts during his closing argument and the district court advised the jury that it could assess the credibility of the expert witnesses. We find that the district court did not plainly err in allowing the DEA agents to serve as expert witnesses.

V.      Prosecutorial Comments

Green asserts that the district court erred in denying his request for a mistrial. Green maintains that his due process rights were violated by the prosecutor's improper comments during his rebuttal closing argument regarding Green's failure to testify. The Government counters that the prosecutor's statements were made in response to Green's counsel's closing argument that the Government failed to turn over a portion of the intercepted telephone recordings to Green. Green's argument is reviewed for plain error because his argument on appeal differs from the argument raised below. See Jimenez, 256 F.3d at 340.[6]

The Fifth Amendment prohibits a prosecutor from commenting either directly or indirectly on a defendant's failure to testify. See United States v. Mackay, 33 F.3d 489, 495 (5th Cir. 1994).

---

[6]At trial, Green's counsel called for a mistrial arguing that the prosecutor's statement impermissibly shifted the burden of proof to Green. Green's counsel asserted that Green "had no burden to put forth any evidence whatsoever."

When determining whether a prosecut or has made such a comment, we consider 1) whether the prosecutor's manifest intent was to comment on the defendant's silence or 2) whether the character of the remark was such that the jury would naturally and necessarily construe it as a comment on the defendant's silence. Id. If there is an "equally plausible explanation for the remark," the prosecutor's intent is not manifest. United States v. Grosz, 76 F.3d 1318, 1326 (5th Cir. 1996). Green's counsel made the following statement during his closing argument:

> . . .o nly those actions which the spin can be placed, to throw a light of dishonesty, criminality, or illegality, was brought forth to you by the Government. You heard the agents testify of the thousands and thousands and thousands of telephone calls, and that the agents made the decision, using the words, which ones were pertinent and non-pertinent. The non-pertinent calls, those judged non-pertinent by the Government, were never recorded . . .Don't you wonder what those calls were about? Wouldn't you love to know what those calls said, as well? Not just the ones that they could give the spin, the twist, the sinister meaning to.

> We'll never know that because they not there. They tried to explain their way out of that the other day on the stand by saying, oh, no, we recorded the non-pertinent calls, too. No, they didn't. No, that's not right. They recorded an initial portion, and when they could tell that call wasn't going where they wanted it to go, for their spin and their twist, click goes the machine.

In his rebuttal, the prosecutor responded by making the following statement regarding the Government's duty to minimize calls:

> Now, Special Agent Lusko said there were about 2,000 calls. We would still be here playing all of those calls. You heard Special Agent Lusko say that he provided every one of those calls to Mr. Bourland . Every one of them . . .

> . . .by the way, conversation number 50, it will say minimize. What does that mean? Well, it means that, yes, that conversation was intercepted, we recorded it, but those were among hundreds of conversations provided to the defendant, which he didn't play."

Green argues that his counsel's statements referenced unrecorded telephone calls, not those

10

recorded by the Government, whether deemed pertinent or non-pertinent. Green asserts that it would have been impossible, even if desired, for him to put forth telephone conversations that were not recorded and do not exist. After reviewing the prosecutor's comments in the context in which they were stated, we conclude that the comments did not reference Green's silence. See United States v. Virgen-Moreno, 265 F.3d 276, 293 (5th Cir. 2001) (holding that the prosecutor did not reference the defendant's failure to testify where the statement was made in response to a comment made by the defense). The prosecutor's comments were merely in response to the defense's argument that the Government failed to turn over intercepted conversations to Green. We find that no reasonable jury would infer that the prosecutor was treading upon Green's right to remain silent. Thus, the district court did not err in denying Green's request for a mistrial.

VI.     Misjoinder of Count X

Acknowledging that his counsel failed to move to sever Count X, possession of a firearm by a convicted felon, from the remaining counts in the indictment, Green argues that this misjoinder constituted plain error. Green argues that Count X arose at a completely different time from the period covered by the other counts at trial. As a result, Green avers that the joinder of Count X "cloud[ed] the fairness of the trier of fact as to the character and propensities." We disagree. The record contains abundant evidence of Green's guilt of the drug trafficking and money laundering related counts. Furthermore, if there was plain error, it did not seriously affect Green's substantial rights or the "fairness, integrity, or public reputation of the judicial proceeding." Longoria, 298 F.3d at 371.

## CONCLUSION

For the foregoing reasons, we REVERSE the denial of Green's suppression motion,

11

VACATE the conviction as to Count X, and REMAND for further proceedings consistent with this opinion. The remaining convictions are AFFIRMED.