# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 12, 2010

No. 08-51161

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

JUAN JOSE HIDALGO; GERARDO ROMERO HIDALGO, also known as
Gerardo A Reyes; ABRAHAM CARRILLO–MORONES,

Defendants - Appellants

Appeals from the United States District Court
for the Western District of Texas
USDC No. 3:07-CR-1624

Before JONES, Chief Judge, and KING and HAYNES, Circuit Judges.

PER CURIAM:[*]

Juan Jose Hidalgo, Gerardo Romero Hidalgo, and Abraham Carrillo–Morones were jointly tried and convicted, by a jury, on various charges stemming from their involvement in a drug trafficking conspiracy. Following these verdicts, each defendant was sentenced to, *inter alia*, 20–24 years of imprisonment. All three defendants independently appeal their convictions and

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Nos. 08-51161, 08-51162, 08-51191

sentences, raising several issues. For the following reasons, we AFFIRM the judgments of conviction and sentence for each defendant.

## I. BACKGROUND

The three defendants—Juan Jose Hidalgo (Hidalgo), Gerardo Romero Hidalgo (Romero), and Abraham Carrillo–Morones (Carrillo)—were jointly tried, as the Government alleged that they were co-conspirators in a large drug conspiracy. The conspiracy involved the use of tractor–trailers to transport drugs from El Paso, Texas, to various points in the United States and to return with drug money. In all, the Government charged 21 individuals with participating in the conspiracy. The Government alleged that the defendants here were truck drivers who drove and assisted on a number of these loads, charging each with multiple counts related to drug trafficking.[1]

The three defendants pleaded not guilty and proceeded to trial. The Government entered into plea deals with several of the charged co-conspirators. At trial, several of these co-conspirators testified, detailing both the general operation of the drug trafficking conspiracy and the specifics of several drug and money deliveries undertaken by the three defendants.

After the close of evidence, each defendant moved for acquittal on each count. The district court denied the motions fully for both Hidalgo and Romero

---

[1] Based on these allegations, the Government charged Hidalgo with one count of conspiring to transport funds outside the United States for the purpose of carrying out drug trafficking in violation of 18 U.S.C. § 1956(a)(1)(A)(i)–(ii) and (h) and with two counts of conspiring to possess more than five kilograms of cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(ii). Romero was charged with two counts of conspiring to possess more than five kilograms of cocaine. Carrillo was charged with one count of conspiring to transport funds outside the United States for the purpose of carrying out drug trafficking, one count of conspiring to possess more than five kilograms of cocaine, one count of conspiring to possess more than 100 kilograms of marijuana in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B)(vii), and one count of attempting to perform an act of violence in furtherance of drug trafficking in violation of 18 U.S.C. § 1952(a)(1). Hidalgo and Romero were both charged in the conspiracy to possess cocaine counts, and Hidalgo and Carrillo were both charged in the conspiracy to transport funds count.

but granted the motion in part as to Carrillo.[2]  The remaining counts were submitted to the jury, which returned guilty verdicts on each count.  Following these verdicts, the district court sentenced each defendant to below or within recommended United States Sentencing Guidelines (the "Guidelines") punishment ranges: 288 months' imprisonment for Hidalgo, 240 months' imprisonment for Romero, and 288 months' imprisonment for Carrillo.[3]  Each defendant timely appealed.

## II.  DISCUSSION

### A.  Juan Jose Hidalgo

Hidalgo presents six issues for review: (1) whether the district court erred in placing on Hidalgo the burden of proof in his motion to suppress evidence obtained from an Illinois traffic stop on October 12, 2006; (2) whether Hidalgo was illegally detained during the Illinois traffic stop; (3) whether the district court erred in failing to instruct the jury not to consider Carrillo's prior bad act in determining Hidalgo's guilt; (4) whether sufficient evidence supported the jury's verdict that Hidalgo conspired to transmit money with the intent to promote drug trafficking; (5) whether sufficient evidence supported the findings that Hidalgo knew of the conspiracy's unlawful objective and joined the conspiracy; and (6) whether the district court erred at sentencing.  We address each in turn.

*1.  Whether the district court erroneously placed the burden on Hidalgo concerning his motion to suppress.*

In considering Hidalgo's motion to suppress evidence obtained during an October 12, 2006, stop of a tractor–trailer that he was driving, the district court

---

[2] The district court acquitted Carrillo of conspiring to possess marijuana and attempting to perform an act of violence in furtherance of drug trafficking.

[3] The district court also required supervised release following incarceration and imposed special assessments and fines on each defendant.

stated that "[t]he proponent of a motion to suppress evidence bears the burden of proving . . . that the challenged evidence was obtained in violation of the Constitution."  Given this statement, Hidalgo argues that the district court erroneously placed the burden of proof on him to show that the Illinois traffic stop was unconstitutional.  This argument is meritless.

"A defendant normally bears the burden of proving by a preponderance of the evidence that the challenged search or seizure was unconstitutional." *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005) (citing *United States v. Guerrero–Barajas*, 240 F.3d 428, 432 (5th Cir. 2001)).  However, "[w]hen the government searches or seizes a defendant without a warrant, the government bears the burden of proving, by a preponderance of the evidence, that the search or seizure was constitutional." *Guerrero–Barajas*, 240 F.3d at 432.  "Therefore, in the instant case, since [the officer] conducted an investigatory stop without a warrant, the government bears the burden of proving, by a preponderance of the evidence, that the investigatory stop was constitutional." *Id.*

Here, the district court made the above-referenced statement as part of its outline of "legal standards" in its ruling on the motion to suppress.  Reading this section completely, and not taking an isolated statement out of context, the district court properly stated that "warrantless searches and seizures are presumptively unreasonable" and that "[a]ny evidence obtained in violation of the Fourth Amendment is inadmissible" before conducting an in-depth Fourth Amendment analysis of the traffic stop and subsequent search.  Then, in the balance of its ruling, the district court undertook a reasoned Fourth Amendment analysis that reveals that the burden was not placed on Hidalgo.  As such, we find no error on this issue.

   2. *Whether Hidalgo was illegally detained during the Illinois traffic stop.*

4

Hidalgo next argues that the Illinois state trooper illegally extended the October 12, 2006, traffic stop in violation of his Fourth Amendment rights so as to require suppression of the evidence obtained at that stop.  We disagree.

Because the stop of the Hidalgo's truck was justified, we must ask "whether the officer's subsequent actions after he legitimately stopped the [tractor–trailer] were reasonably related to the circumstances that justified the stop, or to dispelling his reasonable suspicion developed during the stop." *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004) (en banc).  "Reasonableness requires a balancing of the public interest with an individual's right to be free from arbitrary intrusions by law enforcement." *Id.*  "Reasonable suspicion exists when the detaining officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and seizure." *United States v. Grant*, 349 F.3d 192, 196 (5th Cir. 2003) (alterations and quotation marks omitted).

Here, the Illinois trooper testified that "when he concluded the traffic stop, he suspected th[at Hidalgo and Romero] were transporting drugs and, based on this suspicion, continued to question [Hidalgo]," basing his suspicion on a number of factors.  While these observations may seem innocuous individually, the court "must allow law enforcement officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *Brigham*, 382 F.3d at 507 (quotation marks omitted).

Further, while Hidalgo and Romero were detained in order to complete the vehicle safety inspection and issue the warning ticket—the initial reason for making the stop—the trooper appropriately questioned them.  *See id.* at 508 ("[W]e reject any notion that a police officer's questioning, even on a subject unrelated to the purpose of a routine traffic stop, is itself a Fourth Amendment violation." (emphasis and quotation marks omitted)).  During this questioning,

Nos. 08-51161, 08-51162, 08-51191

the trooper's suspicions were further raised by a number of observations. These observations indicate that the trooper had reasonable suspicion to continue the detention. *See id.* at 507 ("Reasonableness, measured in objective terms by examining the totality of the circumstances, eschews bright-line rules, instead emphasizing the fact-specific nature of the inquiry." (alterations and quotation marks omitted)). We find no error in the district court's ruling on Hidalgo's motion to suppress.

3. *Whether the district court erred in failing to instruct the jury not to consider Carrillo's prior bad act in determining Hidalgo's guilt.*

At trial, testimony was presented about a "shoot-out" in Shreveport, Louisiana, for which Carrillo had been arrested in 2005. Hidalgo argues that the district court "should have instructed the jury that the prior bad act against [Carrillo] should only be considered against [Carrillo]." Hidalgo failed to raise this issue below and acknowledges that the court should review for plain error. To show plain error, Hidalgo must show a forfeited error that is clear or obvious and that affects his substantial rights. *See Puckett v. United States*, 556 U.S. —, 129 S. Ct. 1423, 1429 (2009). If such a showing is made, the court has the discretion to correct the error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.*

Here, the jury was given multiple instructions to separately consider the crimes, conspiracies, and acts charged against each individual defendant. The jury is presumed to follow the charges it is given. *See United States v. Harper*, 527 F.3d 396, 402 (5th Cir. 2008). Further, we have recently considered identical jury charges and concluded that they protected against undue prejudice in a similar situation. *See United States v. Garcia*, 567 F.3d 721, 728–29 (5th Cir. 2009). Accordingly, we find no plain error on this issue. *See also United States v. Cortinas*, 142 F.3d 242, 248 (5th Cir. 1998) (finding no plain error in failure to give further limiting instructions regarding co-conspirator conduct).

6

*4. Whether sufficient evidence supported the jury's verdict that Hidalgo conspired to transmit money with the intent to promote drug trafficking.*

We also reject Hidalgo's claim that there was insufficient evidence to support the jury's verdict on the conspiracy to transport money in furtherance of drug trafficking charge. Hidalgo admits that testimony presented at trial indicates that he conspired to transmit money and drugs as part of the conspiracy; however, he attacks the credibility and reliability of this testimony. Hidalgo's attacks on the witnesses' credibility are unpersuasive at this stage. The sufficiency of the evidence standard gives "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *accord United States v. Casillas*, 20 F.3d 600, 602 (5th Cir. 1994) ("The jury is solely responsible for determining the weight and credibility of the evidence; this court will not substitute its own determination of credibility for that of the jury."). In short, viewing the evidence in the light most favorable to the verdict, *see United States v. Valdez*, 453 F.3d 252, 256 (5th Cir. 2006), a rational jury could have credited the testimony that implicated Hidalgo on this charge. We thus find no error on this issue.

*5. Whether sufficient evidence supported the findings that Hidalgo knew of the conspiracy's unlawful objective and joined the conspiracy.*

Hidalgo also challenges whether there was sufficient evidence to determine that he knew of the conspiracy's objectives and joined the conspiracy, again casting aspersions on the consistency and accuracy of the trial testimony presented. After reviewing the testimony presented at trial, we conclude that there was sufficient evidence presented at trial to support the jury's findings. Accordingly, we discern no error on this issue.

*6. Whether the District Court Erred at Sentencing.*

Hidalgo also challenges the length of his sentence of imprisonment, arguing that it was disproportionate to the crime he committed and larger than the sentences received by cooperating co-conspirators who played a larger role in the conspiracy.  We find no merit in these arguments.

On Hidalgo's comparison with his co-conspirators, "[i]t is well settled that an appellant cannot challenge his sentence based solely on the lesser sentence given to his co-defendants." *United States v. McKinney*, 53 F.3d 664, 678 (5th Cir. 1995).  But beyond this, Hidalgo has not shown that his sentence was unreasonable.  Hidalgo does not argue that the Guidelines punishment range was improperly calculated.  The district court departed from this Guidelines range, finding it excessive, and imposed a sentence below the Guidelines range. We do not find this sentence unreasonable.  *See United States v. Carey*, 589 F.3d 187, 196 (5th Cir. 2009) ("In this circuit, a sentence within the Guidelines range is presumed reasonable on appeal." (quotation marks omitted)).  Hidalgo has not shown any error in sentencing.[4]

## B.  Gerardo Romero Hidalgo

Romero presents four issues on appeal which overlap, in substantial part, with those issues presented by Hidalgo: (1) whether the district court erred in placing on Romero the burden of proof in his motion to suppress evidence obtained from the Illinois traffic stop; (2) whether Romero was illegally detained during the Illinois traffic stop; (3) whether sufficient evidence supported his conviction on various charges; and (4) whether the district court erred at

---

[4] Hidalgo also argues that application of the mandatory minimum sentence to his crime is unconstitutional, but that argument is meritless.  *See generally Almendarez–Torres v. United States*, 523 U.S. 224, 230 (1998); *accord United States v. Robinson*, 344 F. App'x 936, 940–41 (5th Cir. 2009) (per curiam) ("We hold that the application of the statutory mandatory minimum in 21 U.S.C. § 841(b)(1)(A) does not violate [the defendant's] Fifth and Fourteenth Amendment rights to substantive due process or to a judicial determination of the reasonableness of his sentence.").

sentencing. We address each in turn, referencing our discussion of Hidalgo's issues on appeal.

*1. Whether the district court erred in placing on Romero the burden of proof in his motion to suppress evidence obtained from the Illinois traffic stop.*

Romero was riding along with Hidalgo when the tractor–trailer was stopped in Illinois on October 12, 2006. Romero joined Hidalgo's motion to suppress the evidence obtained from this traffic stop, and the district court addressed both of their arguments in its ruling on this motion. Romero's challenge to the district court's ruling on appeal, arguing that the court improperly placed upon him the burden of proving that the Illinois traffic stop was unconstitutional, is foreclosed for the reasons outlined in subsection IIA1 above.

*2. Whether Romero was illegally detained during the Illinois traffic stop.*

Like Hidalgo, Romero argues that he was illegally detained during the Illinois traffic stop. However, Romero raises no argument that suggests that the analysis of the stop with respect to Hidalgo does not equally apply to him. Thus, for the reasons outlined in subsection IIA2 above, we find no error in the district court's suppression decision.

*3. Whether sufficient evidence supported Romero's convictions.*

Like Hidalgo, Romero contends that the evidence at trial was insufficient to support his convictions, pointing to supposed inconsistencies and problems with the testimony presented. Romero's attacks on the testimony presented at trial are unpersuasive. *See Casillas*, 20 F.3d at 602. Taken in the light most favorable to the verdict, this testimony indicated that Romero participated in a number of shipments of drugs and money. Further, this testimony was also supported by the fact that Romero was arrested, along with Hidalgo, riding in a truck containing a large amount of cocaine. Sufficient evidence supports the jury's verdict, and we find no error on this issue.

Nos. 08-51161, 08-51162, 08-51191

*4. Whether the district court erred at sentencing.*

Finally, like Hidalgo, Romero challenges the sentence imposed following conviction, arguing that the application of the mandatory minimum sentence violated his rights and that his sentence was unreasonable. Romero was sentenced to 240 months' imprisonment, a sentence within the recommended Guidelines range. We find no error in Romero's sentence. *See Carey*, 589 F.3d at 196.

## C. Abraham Carrillo–Morones

Carrillo presents eight issues for review: (1) whether the district court erred by denying his motion to sever the trials; (2) whether the district court erred by denying his motion to suppress certain evidence related to currency seized by the Government; (3) whether the prosecutor's improper question prejudiced his right to a fair trial; (4) whether the district court erred by failing to strike the testimony of Humberto Nunez–Padilla (Nunez) testimony without proper explanation to the jury; (5) whether the district court erred in admitting an evidentiary summary and organizational chart as evidence; (6) whether the district court erred in dealing with a prosecutor's statement that may have improperly addressed his Fifth Amendment right to remain silent; (7) whether sufficient evidence supported his jury conviction; and (8) whether the district court erred at sentencing. We address each in turn.

*1. Whether the district court erred by denying Carrillo's motion to sever the trials.*

Carrillo first argues that the district court erred in denying his motion to sever his trial from Hidalgo and Romero's trial, contending that he did not participate in the same conspiracy and that he was prejudiced by the evidence presented against Hidalgo and Romero. We find no error in the district court's denial of severance.

10

"We review a grant or denial of severance for abuse of discretion." *United States v. Lewis*, 476 F.3d 369, 383 (5th Cir. 2007). "There is a preference in the federal system for joint trials of defendants who are indicted together, particularly in conspiracy cases." *Id.* (quotation marks omitted). "To prevail, the defendant must show that: (1) the joint trial prejudiced him to such an extent that the district court could not provide adequate protection; and (2) the prejudice outweighed the government's interest in economy of judicial administration." *United States v. Peterson*, 244 F.3d 385, 393 (5th Cir. 2001) (quotation marks omitted).

We find no error in the joinder of the defendants here. The Government alleged that each defendant was part of a larger conspiracy, charging overlapping activity in furtherance of that conspiracy. At trial, the Government presented testimony from several witnesses showing that each defendant worked with the same individuals to transport drugs from El Paso and to return with drug money. "In this situation joinder of both offenses for trial fulfills the purpose underlying the rule because it avoids duplication of time and effort of both the prosecution and the courts and minimizes the prejudice to the defendants." *United States v. Gentile*, 495 F.2d 626, 630 (5th Cir. 1974).

Further, we are not persuaded that Carrillo has shown the requisite "clear, specific, and compelling prejudice" so as to require severance. *United States v. Posada–Rios,* 158 F.3d 832, 863 (5th Cir. 1998). "A spillover effect, by itself, is an insufficient predicate for a motion to sever." *United States v. Bieganowski*, 313 F.3d 264, 287 (5th Cir. 2002). Moreover, the large quantity or drugs discovered when Hidalgo and Romero was arrested, which Carrillo claims prejudiced his trial, is not the type of evidence we have found to be prejudicial to co-defendants. *See, e.g., Posada–Rios,* 158 F.3d at 863 (5th Cir. 1998) (determining that evidence of "gruesome murders" committed by co-conspirators did not prejudice co-defendants so as to require severance and noting that "while

11

Nos. 08-51161, 08-51162, 08-51191

the district court must guard against undue prejudice, it need not protect conspirators from evidence of their confederates' acts in furtherance of their common illegal aim.") (alterations and quotation marks omitted). Additionally, the district court gave numerous instructions to the jury, which mitigated any prejudice. *See Harper*, 527 F.3d at 402. In sum, we discern no error on this issue.

   2. *Whether the district court erred by denying Carrillo's motion to suppress certain evidence related to currency seized by the Government.*

Carrillo argues that the district court should have suppressed evidence related to currency seized on June 4, 2007. Carrillo filed a motion in limine to exclude this evidence, claiming that the Government averred that it would make the seized currency available to him for inspection, but instead disposed of the currency. Carrillo contends that the failure to produce this evidence deprived him of the ability to present exculpatory evidence of a lack of fingerprints on this currency. We find no error in the district court's decision.[5]

The Government is required "to disclose to criminal defendants favorable evidence, material to guilt or punishment." *United States v. Moore*, 452 F.3d 382, 387 (5th Cir. 2006) (per curiam). "[I]mpermissibly withheld evidence must be either (1) material and exculpatory or (2) only potentially useful, in combination with a showing of bad faith on the part of the government." *Id.*

Here, we are unpersuaded that the currency evidence "destroyed" by the Government was material. Carrillo could have cross-examined the officers to

---

[5] Generally, an evidentiary ruling is reviewed for abuse of discretion, but where an appellant fails to renew an objection made by motion in limine before the disputed evidence was introduced at trial, review is for plain error. *See United States v. Duffaut*, 314 F.3d 203, 209 (5th Cir. 2002). It is undisputed that Carrillo did not re-raise this motion when the currency evidence was introduced at trial, but the district court did state, at the hearing on the motion in limine, that the error was "preserved." Thus, we assume, *arguendo*, that Carrillo sufficiently preserved error on this issue, and we review the district court's suppression decision for abuse of discretion. Finding no abuse of discretion, we necessarily find that there was also no "plain error" in the district court's decision.

12

ask if they removed any latent prints related to him. Admission by the agents that no fingerprints were present would likely have mirrored the exculpatory value of Carrillo's having actually tested the money for prints himself. *See California v. Trombetta*, 467 U.S. 479, 490 (1984) (noting that defendant could cross-examine officer administering breathalyzer to suss out exculpatory evidence). Indeed, it is not clear that not finding fingerprints on money is exculpatory evidence itself: money, by its nature, is touched by numerous persons in transactions and the savvy criminal knows to conceal his fingerprints. *Cf. id.* (noting the low probability of finding exculpatory evidence). Moreover, as opposed to other failure to preserve cases, the Government sought to introduce the currency evidence to show generally that currency of a certain amount was transported, not that Carrillo himself touched the dollars: the Government did not introduce evidence of the attributes of this currency. *Cf. United States v. Dela Espriella*, 781 F.2d 1432, 1437–38 (9th Cir. 1986) (following *Trombetta*, failure to preserve currency that canine detected cocaine on did not require suppression of evidence of canine cocaine detection).

Further, even if the evidence was "potentially useful," Carrillo has not shown any bad faith on the Government's behalf. *See Moore*, 452 F.3d at 387. Carrillo does not contend that the Government followed improper procedures in transforming the seized funds into a cashiers check. As such, there is no bad faith here. *See id.* at 388–89 ("[E]vidence . . . destroyed pursuant to standard procedure . . . did not constitute a constitutional violation . . . . [The Government] did not destroy the [evidence] in bad faith."). The district court did not abuse its discretion in denying Carrillo's motion to exclude evidence of the seized currency.

*3. Whether the prosecutor's improper question prejudiced Carrillo's right to a fair trial.*

Nos. 08-51161, 08-51162, 08-51191

Carrillo next argues that the Government asked an improper question while examining an agent at trial. Specifically, the Government asked a federal agent whether "there are ongoing investigations still that relate to this case." Carillo's counsel objected to this question, and the district court sustained the objection before the agent could answer. However, the court denied Carillo's subsequent motion to strike the question. Carillo contends on appeal that the question was unduly prejudicial to his right to a fair trial. We are unpersuaded.

"In evaluating the extent to which prosecutorial comments have affected the defendant's right to a fair trial, three factors are probative: the magnitude of the prejudicial effect of the remarks, the efficacy of any cautionary instruction, and the strength of the evidence of the defendant's guilt." *United States v. Diaz–Carreon*, 915 F.2d 951, 956 (5th Cir. 1990). Here, the prejudicial effect of the prosecutor's remark is small because it does not necessarily suggest that Carrillo or his co-defendants were facing further charges. *See id.* at 956–57 ("When the prosecutor's argument is considered in context, however, it is apparent that the prejudicial effect of the questionable comments is limited."). Second, the defense counsel's timely objection mitigated any prejudice from the prosecutor's statement. *See id.* at 958. Finally, the prosecutor's question, within the volumes of transcript and evidence in the case, hardly suggests unfairness. *Cf. id.* at 959 (finding no reversible error even where the prosecutor "repeated[ly]" reli[ed] on sarcasm, innuendo or misstatement."). We find no reversible error on this issue.

*4. Whether the district court erred in its decisions concerning Nunez's testimony.*

Carrillo next urges that the district court improperly dealt with Nunez's testimony. Nunez testified concerning both a March 2007 and a May 2007 drug and money load, indicating that Carrillo participated in these shipments. Specifically at issue here, Nunez testified about a drug transaction occurring on

14

May 29, 2007, at a carwash.  At trial, Carrillo raised numerous objections to Nunez's testimony.  Ultimately, the court struck Nunez's testimony "[a]s it relates to the exchange that took place at the carwash on May 29 . . . which the witness did not have personal knowledge and did not view."  Carrillo now argues that the district court's strike of this testimony "was too little too late," claiming that initially allowing this testimony substantially prejudiced his trial.  We find no merit in this argument.

Admission of testimony is an "evidentiary ruling [which we review] for abuse of discretion . . . subject to the harmless error rule."  *United States v. Dunigan*, 555 F.3d 501, 507 (5th Cir. 2009).  Here, we find no effect on Carrillo's substantial rights both because other witnesses later testified to the same events as Nunez, suggesting that Nunez's testimony was not prejudicial, and because the district court did strike the questionable portions of Nunez's testimony, with instructions to the jury to disregard it.  As stated above, the jury is presumed to follow such instructions.  *See Harper*, 527 F.3d at 402.  In short, Carrillo does not show reversible error on this issue.

 5. *Whether the district court erred in admitting a "phone chart" into evidence.*

At trial, the Government sought to introduce a "phone chart" indicating certain facts about the conspiracy.  After a federal agent laid the foundation for introducing this evidence, Carrillo objected, arguing that the evidence was not admissible, though admitting that the chart might be proper as a "demonstrative exhibit."  The district court overruled the objection, admitting the chart under Rule 611 of the Federal Rules of Evidence.  Carrillo claims that the admission of the chart into evidence was error, given that it summarized information already admitted, and that the chart's portrayal of him at the "center" of the conspiracy prejudiced his rights.  We find no reversible error.

The district court's admission of a summary chart is reviewed for an abuse of discretion.  *United States v. Winn*, 948 F.2d 145, 157 (5th Cir. 1991).  "If the

15

court errs in its evidentiary ruling, the error can be excused if it was harmless. In applying this rule, we have stated: A nonconstitutional trial error is harmless unless it had substantial and injurious effect or influence in determining the jury's verdict." *United States v. Buck*, 324 F.3d 786, 790 (5th Cir. 2003) (quotation marks omitted).

We assume, *arguendo*, that admission of the chart into evidence was error because the Government admits the chart summarized information previously admitted into evidence. *See id.* at 790–91 (detailing the interplay of Rules 611 and 1006 and discussing the proper admission of charts and exhibits under each rule). However, we think any error harmless. The chart accurately summarized records previously admitted, and the claimed "implication" of the chart is not sufficient to warrant reversal. *See id.* at 791 ("Despite the fact that it was an error of law, and therefore an abuse of discretion, to admit the diagram, it was harmless, because the diagram accurately summarized testimony and other evidence that had been properly admitted and therefore was already before the jury."); *id.* (determining that even though defendant "rest[ed] on the argument that [the chart wa]s misleading because it *implie*[*d* a greater role in the crime]" the defendant's ability to cross-examine witnesses and examine evidence supporting the chart was sufficient to protect against any improper implications of the chart). We find no reversible error on this issue.

*6. Whether the district court erred regarding the prosecutor's statement which may have improperly addressed the defendants' Fifth Amendment rights.*

Carrillo also points to error concerning the following statement during the Government's closing statement rebuttal: "And you know something that neither of these guys can explain to you, and they haven't explained to you, is what happens when they get to . . ." Defense counsel for Hidalgo and Romero objected to this statement and the court sustained the objection and struck the statement, ordering the jury to disregard it. Defense counsel then moved for a

mistrial, but the court denied that motion, without giving further curative instructions or admonitions. Carrillo now argues that the character of the remark was such that the jury would construe it as a comment on his silence, and that the statement "had substantial impact on the jury verdict." We disagree.

"The Fifth Amendment prohibits a prosecutor from commenting directly or indirectly on a defendant's failure to testify." *United States v. Mackay*, 33 F.3d 489, 495 (5th Cir. 1994). "This protection extends to oblique comments on a defendant's failure to testify, if sufficiently suggestive." *Id.* (quotation marks omitted). "The test for determining whether a prosecutor's remarks constitute a comment on a defendant's silence is a twofold alternative one: (1) whether the prosecutor's manifest intent was to comment on the defendant's silence or (2) whether the character of the remark was such that the jury would naturally and necessarily construe it as a comment on the defendant's silence." *Id.* (quotation marks omitted). "Both the intent of the prosecutor and the character of the remarks are to be determined by reviewing the context in which they occurred." *Id.*

Here, we are not persuaded that the prosecutor's statement was a comment on the defendants' silence. First, the prosecutor discussed two testifying witnesses statements right before he made the challenged statement. As such, the "these guys" in the challenged statement could also have referred to the testifying witnesses, not the defendants. *See id.* at 495 ("Placed in context, the prosecutor's comments do not manifest an intent to comment on [the defendant]'s failure to testify . . . . The sentences immediately preceding the highlighted comments clarify the antecedent of 'that' and 'that testimony.'"). Further, as the statement came in a closing statement rebuttal, we do not think the jury would necessarily construe the comment as concerning the defendants' silence, instead seeing the statement as commenting on the unpersuasiveness

17

of the defendant's closing argument. *Cf. id.* at 496 ("Read in context, the prosecutor's remarks simply argue to the jury that the defense failed to produce evidence [supporting its theory]. It is not error to comment on the defendant's failure to produce evidence on a phase of the defense upon which he seeks to rely." (quotation marks omitted)); *accord United States v. Green*, 324 F.3d 375, 382 (5th Cir. 2003) (prosecutor did not reference the defendant's failure to testify where the statement was made in response to a comment made by the defense). We find no reversible error on this issue.

       7. *Whether sufficient evidence supported Carrillo's conviction.*

Like Hidalgo and Romero, Carrillo argues that the evidence presented at trial was insufficient to support his conviction, claiming a number of deficiencies. We disagree.

We ask "whether the evidence is sufficient by viewing the evidence and the inferences that may be drawn from it in the light most favorable to the verdict and determining whether a rational jury could have found the essential elements of the offenses beyond a reasonable doubt." *Valdez*, 453 F.3d at 256 (quotation marks omitted). "It is not necessary that the evidence exclude every rational hypothesis of innocence or be wholly inconsistent with every conclusion except guilt, provided a reasonable trier of fact could find the evidence establishes guilt beyond a reasonable doubt." *Id.* (quotation marks omitted).

Carrillo's arguments challenging the credibility of witnesses and the weight of their testimony are unpersuasive. *See Casillas*, 20 F.3d at 602. Carrillo's arguments concerning spillover are likewise unpersuasive. *See Lewis*, 476 F.3d at 384. Further, Carrillo's argument that little direct evidence shows his knowledge of drugs or the other elements charged in the conspiracy also fails to persuade. *See United States v. Garcia Abrego*, 141 F.3d 142, 155 (5th Cir. 1998). The testimony presented showed that Carrillo participated in several drug transactions by both transporting contraband and aiding in the logistical

aspects of several drug and money runs. This evidence, viewed in the light most favorable to the verdict, could lead a rational jury to conclude that the Government sufficiently proved all elements of the charged crimes. *See Valdez*, 453 F.3d at 256. In sum, sufficient evidence supports Carrillo's conviction.

*8. Whether the district court erred at sentencing.*

Finally, Carrillo challenges his sentence, arguing that his Sixth Amendment rights were violated by the district court's determination of facts at sentencing and that his sentence was generally unreasonable. Carrillo's Sixth Amendment arguments concerning the court's determination of drug quantities for sentencing are foreclosed. *See United States v. Mares*, 402 F.3d 511, 519 (5th Cir. 2005) ("The sentencing judge is entitled to find by a preponderance of the evidence all the facts relevant to the determination of a Guidelines sentencing range . . . ."); *accord United States v. Alonzo*, 435 F.3d 551, 553 (5th Cir. 2006) (extending *Mares* to drug quantities). Further, because Carrillo was sentenced within the Guidelines, we cannot say that his sentence was "unreasonable." *See Mares*, 402 F.3d at 519 ("If the sentencing judge exercises her discretion to impose a sentence within a properly calculated Guideline range, in our reasonableness review we will infer that the judge has considered all the factors for a fair sentence set forth in the Guidelines."). Carrillo's arguments do not convince us that the district court's factual findings were erroneous or that his within guidelines sentence was unreasonable. We find no error in Carrillo's sentence.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgments of conviction and sentence for each defendant.

AFFIRMED.